89 P.3d 663 (2004)
The STATE of Nevada, Richard A. Gammick, Washoe County District Attorney, Petitioners,
v.
The SECOND JUDICIAL DISTRICT COURT of the State of Nevada, IN AND FOR the COUNTY OF WASHOE, and the Honorable Steven R. Kosach, District Judge, Respondents, and
Claude Eric Epperson, Jr.; Ryan Andrew Barnes; Doni Kevin Hodge; and Brittania Larae Todd, Real Parties in Interest.
No. 42048.
Supreme Court of Nevada.
May 13, 2004.
*664 Richard A. Gammick, District Attorney, and Gemma Greene Waldron, Deputy District Attorney, Washoe County, for Petitioners.
John P. Calvert, Reno, for Real Party in Interest Brittania Larae Todd.
John J. Kadlic, Reno, for Real Party in Interest Doni Kevin Hodge.
Michael R. Specchio, Public Defender, and Cheryl D. Bond and Cotter C. Conway, Deputy Public Defenders, Washoe County, for Real Party in Interest Ryan Andrew Barnes.
Martin H. Wiener, Reno, for Real Party in Interest Claude Eric Epperson, Jr.
JoNell Thomas, Las Vegas, for Amicus Curiae Nevada Attorneys for Criminal Justice.
Before BECKER, AGOSTI and GIBBONS, JJ.

OPINION
PER CURIAM.
Petitioner the State of Nevada refused to copy and produce a child pornography videotape to defense counsel based on NRS 200.710 to 200.735 and 18 U.S.C. § 2252. The State provided the real parties in interest Claude Eric Epperson, Jr. (Claude), Ryan Andrew Barnes (Ryan), Doni Kevin Hodge (Doni), and Brittania Larae Todd (Brittania) (collectively the Epperson defendants) access to the child pornography videotape by allowing them to view it with counsel at the prosecutor's office. The Epperson defendants claim that they need a copy of the videotape to prepare for trial and present the videotape in a manner consistent with their defense. Amicus curiae Nevada Attorneys for Criminal Justice agrees with the Epperson defendants that the child pornography videotape should be copied and delivered to the defense attorneys for trial preparation.

FACTS
On January 19, 2003, thirteen-year-old E.R. went to the Lake Mill Lodge store to get some ice cream. E.R. met her neighbor, Brittania, at the store. Brittania invited E.R. to visit Brittania later at her apartment. E.R. went to Brittania's apartment and found "people in there drinking and dancing and girls in there taking off their shirts and undressing and [dancing] with the guys."
E.R. only drank alcohol and did not eat while at Brittania's apartment. E.R. went to Brittania's apartment to get alcohol, but she did not want to take her clothes off or have sex. As E.R. drank alcohol, she observed one girl dancing on top of a guy with her shirt off and Brittania dancing with another guy, taking her clothes off as well. E.R. does not remember anything else that happened at Brittania's apartment. The next thing she remembered was being in the hospital.
E.R. had passed out, so two of E.R.'s friends took her home. E.R.'s mother, Jennifer, arrived and attempted to revive E.R. Jennifer smelled alcohol on E.R.'s breath and determined that she was unresponsive. Because E.R. could not breathe, Jennifer called emergency services. The ambulance first took E.R. to St. Mary's Hospital and then to Northern Nevada Medical Center.
E.R. was at St. Mary's Hospital for about an hour, where staff performed a blood-alcohol test on her. Then, a nurse conducted a sexual assault exam on E.R. E.R. was crying and confused; she smelled of alcohol at the time the nurse performed the exam. E.R. told the nurse that she believed she had been sexually assaulted.
The nurse discovered that E.R. had multiple bruises on her face, a black eye, bruising on her neck, and scratches on her jaw. She also had abrasions and tears to her genitalia, including one deep tear and many tiny tears. One of the abrasions was still bleeding during the examination. The nurse testified that "this type of injury would support a patient's claim that they were sexually assaulted." *665 The nurse also considered it possible that someone may have placed a date rape drug in E.R.'s drink because it usually requires more than two glasses of alcohol to cause someone to lose consciousness.
E.R.'s friend, A.H., was also at Britannia's apartment on January 19, 2003. A.H. started drinking alcohol between 7:50 p.m. and 8 p.m. Around 8:20 p.m., Brittania let Claude, Doni, Ryan, and Nick, a man who was not charged, into her apartment. Everyone started drinking and "rapping or something." A.H. saw Doni in the kitchen kissing E.R. and later saw Ryan on top of E.R. in the bathroom. Claude videotaped Ryan having intercourse with E.R. on the bathroom floor. A.H. told Claude and Nick that E.R. was only thirteen or fourteen years old. A.H. returned to the bathroom fifteen minutes later and told E.R. that her mother called and wanted her to go home. Because A.H. was scared about E.R.'s safety, a few minutes later A.H. told E.R. again that her mother called. A.H. heard E.R. say, "No," when she came back the second time. A.H. went back to check on E.R. three or four more times. After E.R. left, A.H. found an empty bottle of vodka in the bathroom.
Detective Lopez interviewed Claude, A.H., Ryan, Brittania, E.R., and Jennifer about what happened at Brittania's apartment on January 19, 2003. Claude willingly told Detective Lopez about the videotape. Detective Lampert interviewed Doni regarding the sexual assault. Doni implicated Claude and Ryan as having sex with E.R. After the police established probable cause, the police arrested Claude, Doni, Brittania, and Ryan. Officer Linder conducted the inventory search when the police booked Claude into jail. Officer Linder found a videotape in Claude's right front pocket. The videotape contained about one hour of explicit sexual conduct between the guys and girls at Brittania's apartment, including sexual conduct with thirteen-year-old E.R.
On May 28, 2003, the grand jury indicted Claude on two counts of sexual assault on a child or, in the alternative, two counts of lewdness with a child under the age of fourteen years. The grand jury indicted Doni on one count of lewdness with a child under the age of fourteen years and three counts of sexual assault on a child or, in the alternative, three counts of lewdness with a child under the age of fourteen years. The grand jury indicted Ryan on three counts of sexual assault on a child or, in the alternative, three counts of lewdness with a child under the age of fourteen years. The grand jury also indicted Claude, Doni, Ryan, and Brittania on one count of unlawfully using a minor in producing pornography.
On August 8, 2003, the district court conducted a hearing on the Epperson defendants' motion for discovery of the child pornography videotape. Because the defense attorneys filed the motion the day of the hearing, the State was not able to prepare a written response. The district court delayed granting the motion until the judge viewed the videotape and the State filed a response. On September 11, 2003, the district court granted the motion to allow discovery of the videotape. The order included the restriction that the videotape "be viewed by those only necessary for preparation of said defense." On September 12, 2003, the district court stayed the proceedings pending the resolution of this writ petition.

DISCUSSION
This court has original jurisdiction over a writ of mandamus.[1] "[A] writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station or to control an arbitrary or capricious exercise of discretion."[2] A writ of mandamus "shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law."[3] We have held that "we may exercise ... discretion where ... an important issue of law *666 requires clarification."[4] A writ of prohibition may issue to prevent improper discovery when a district court enters a discovery order in excess of its jurisdiction.[5]
The State does not have an adequate remedy at law because NRS 200.725 specifically prohibits reproduction of child pornography and the district court ordered the State to violate that statute. Additionally, pretrial discovery matters are subject to review by petitions for writ of mandamus or prohibition to this court. Since there is no available remedy for the State and this is a pretrial discovery issue, a writ of prohibition is the appropriate remedy.

Discovery of child pornography
The State argues that making copies of the child pornography tape for defense counsel would violate Nevada's child pornography statutes, NRS 200.710 to 200.730. The State acknowledges that there is an exception to the Nevada child pornography statutes for law enforcement personnel only. NRS 200.735 provides that the "provisions of NRS 200.710 to 200.730, inclusive, do not apply to law enforcement personnel during the investigation or prosecution of a violation of the provisions of NRS 200.710 to 200.730, inclusive." Because NRS 200.735 does not mention defense attorneys, the State argues that they are private citizens and have no right to possess child pornography. We disagree.
Although NRS 200.735 does not specifically list defense attorneys, the United States Constitution and its amendments protect a defendant's ability to adequately prepare for trial. The Fifth Amendment to the United States Constitution protects a defendant's due process rights. "Due process requires the State to disclose material evidence favorable to the defense."[6] "Evidence is material when there is a reasonable probability that had the evidence been available to the defense, the result of the proceeding would have been different."[7]
In the instant case, the videotape might contain information favorable to the Epperson defendants. They argue that they have a right to present the videotape in a manner that supports their theories of defense. The Epperson defendants contend that to present their side of the case, they need the videotape to enhance certain images to show their absence in the videotape. They also want to use the videotape to show that E.R. consented to the sexual activity and that she was physically and mentally capable of resisting the activity.[8] The result of the trial might be affected if the defense does not have a copy of the videotape. Therefore, the videotape is material evidence.
The Epperson defendants rely on the California case of Westerfield v. Superior Court in support of their argument.[9] In Westerfield, the police seized thousands of child pornography images from Westerfield. Westerfield requested copies of the images for his attorneys and experts to view privately, confidentially, and to discuss. The deputy district attorney allowed Westerfield's attorney to view the images in the FBI office in the presence of law enforcement, but refused to provide copies of the images, stating that it would violate the California child pornography statute.[10] Westerfield argued in a writ petition that his attorney would ineffectively represent him and he would be unable to adequately prepare his case without copies of the images.[11] The California court held that nothing in the plain language of the child *667 pornography statute prohibited defense counsel from obtaining copies for the purpose of preparing for trial.[12] The California court also stated that
[t]he People's interpretation of the statutethat the deputy district attorney would violate the law if he copied the images for the defensenot only defeats the purpose of the law and exalts absurdity over common sense, but it is also logically flawed.[13]
The California court determined that preventing Westerfield from having copies of the images would affect his right to a speedy trial and effective assistance of counsel. The California court issued the writ and allowed Westerfield's counsel to receive copies of the child pornography images for trial preparation.[14]
The Arizona Court of Appeals also discussed this issue in Cervantes v. Cates.[15] In Cervantes, the police seized child pornography images and videotapes from Cervantes. Cervantes requested copies of both the videotapes and photographs to prepare for his defense. The State declined to provide copies of the material, but allowed Cervantes and his attorney to view the materials in the prosecutor's office.[16] On a petition to the Arizona Court of Appeals, the court reasoned that the "child pornography laws were not aimed at prohibiting defense counsel from preparing for trial, but to prohibit the spread of child pornography."[17] Following California's guidance, the Arizona court held that "[p]rovided that defense counsel, like the police, prosecutors and court personnel use the material solely for their investigation, prosecution, defense and resolution of the case at hand, neither their possession of it nor the State's copying of it solely for such purposes should expose them to criminal liability."[18] The Arizona court allowed defense counsel to receive copies of the child pornography to prepare for trial.[19]
The State relies on two federal cases, United States v. Horn[20] and United States v. Kimbrough,[21] in support of its contention that 18 U.S.C. § 2252 prohibits giving copies of the seized videotape to defense counsel. However, contrary to the State's assertions, neither case stands for this proposition.
In both cases, defendants sought copies of seized child pornography evidence under Fed.R.Crim.P. 16(a)(1)(C), which requires the government to permit the defendant to inspect and copy evidence in the possession of the government that is material to the preparation of the defendant's defense. The federal district courts either denied the discovery motion[22] or found that the government's refusal to make copies did not warrant a dismissal of the pending criminal charges.[23] In each case, the government had offered alternative procedures for the defense to view the evidence and offered to permit access to the videotape by defense counsel and defense experts.[24] In Kimbrough, the government also offered to transport the evidence to the expert or defense counsel's office for viewing.[25]
On appeal, the United States Courts of Appeals for the Fifth Circuit and the Eighth Circuit found that Fed.R.Crim.P. 16(a)(1)(C) did apply to contraband. The courts also concluded that there were situations in which a defendant might need copies of the evidence to adequately prepare a defense and that failure to grant such access might prejudice a defendant and amount to a denial of *668 due process. Based upon the facts of those cases, the circuit courts found that the defendants had not demonstrated prejudice and the decisions of the federal trial courts to restrict access were affirmed as an appropriate use of discretion.[26]
We conclude that California's and Arizona's decisions are analogous to the instant case. In both Cervantes and the instant case, the police seized child pornography videotapes. In this case, the State has allowed defense counsel to view the videotape at its office. The State has refused to produce a copy for defense counsel to review privately and with experts.
The manner in which the Epperson defendants plan to show identity and consent is by slowing down the videotape and enhancing the video and audio tracks. The district court viewed the videotape and held that it was discoverable under NRS 174.235. Because nothing in NRS 174.235 or NRS 200.710 to 200.735 precludes child pornography from being copied for the purpose of defending criminal charges, we hold that the district court did not abuse its discretion in ordering the State to provide the Epperson defendants with a copy of the videotape to adequately prepare their defense.
Additionally, as the California court noted, denying defense counsel copies of the child pornography hinders the defendant's right to effective assistance of counsel.[27] The Epperson defendants' constitutional rights trump any prohibition of NRS 200.710 to 200.735. Therefore, we follow California and Arizona and allow defense counsel to have a copy of the videotape, with certain specific restrictions.

Restrictions on the videotape
We acknowledge that each factual situation must be addressed by the district court on a case-by-case basis; however, defense counsel must adhere to these strict limitations regarding their copy of the videotape:
(1) the defendant cannot possess a copy of the videotape; however, the defendant may view it with counsel in preparing the defense;
(2) counsel cannot make additional copies of the videotape;
(3) only the attorneys, legal staff, defendants, an audio/video technician, and expert witnesses may view the videotape;
(4) the attorneys must keep the videotape safe at their place of business;
(5) no one may mail or transport the videotape by any third-party commercial carriers;
(6) no one may transport the videotape across state lines without a written court order; and
(7) (after trial) at the conclusion of the case, defense counsel must promptly return the copy directly to the prosecutor who will destroy it.
Defense counsel is an officer of the court and is responsible for the videotape and its safekeeping. The district court may impose greater restrictions based on the circumstances. The audio/video technician may make enhanced copies of specific portions of the videotape for trial purposes, but shall not retain a copy for any reason.

CONCLUSION
As discussed in Cervantes, the purpose of child pornography statutes is to prevent the distribution of child pornography and protect children; it is not to prevent defense counsel from adequately preparing for trial.[28] The district court's order compelling discovery of the videotape was not an abuse of discretion.[29] Accordingly, we grant the petition for a writ of prohibition in part and direct the clerk to issue a writ instructing the district court to grant the Real Parties in Interest discovery of the videotape *669 subject to the above restrictions on the videotape.
NOTES
[1] Nev. Const. art. 6, § 4; NRS 34.160.
[2] Salaiscooper v. Dist. Ct., 117 Nev. 892, 901, 34 P.3d 509, 515 (2001).
[3] NRS 34.170.
[4] Smith v. District Court, 113 Nev. 1343, 1345, 950 P.2d 280, 281 (1997).
[5] Wardleigh v. District Court, 111 Nev. 345, 351, 891 P.2d 1180, 1183 (1995); see also Clark v. District Court, 101 Nev. 58, 64, 692 P.2d 512, 516 (1985).
[6] Steese v. State, 114 Nev. 479, 492, 960 P.2d 321, 330 (1998).
[7] Id.
[8] The Epperson defendants argue that the videotape is needed to show consent of the victim; however, a jury may find a defendant guilty of lewdness regardless of consent. See State v. Koseck, 113 Nev. 477, 479, 936 P.2d 836, 838 (1997).
[9] 99 Cal.App.4th 994, 121 Cal.Rptr.2d 402 (Ct. App.2002).
[10] Id. at 403.
[11] Id. at 403-04.
[12] Id. at 404.
[13] Id.
[14] Id. at 405.
[15] 206 Ariz. 178, 76 P.3d 449 (Ct.App.2003).
[16] Id. at 451.
[17] Id. at 456.
[18] Id. at 457.
[19] Id.
[20] 187 F.3d 781 (8th Cir.1999).
[21] 69 F.3d 723 (5th Cir.1995).
[22] Horn, 187 F.3d at 792.
[23] Kimbrough, 69 F.3d at 730-31.
[24] Horn, 187 F.3d at 792; Kimbrough, 69 F.3d at 731.
[25] 69 F.3d at 731.
[26] Horn, 187 F.3d at 792; Kimbrough, 69 F.3d at 731.
[27] Westerfield, 121 Cal.Rptr.2d at 405.
[28] 76 P.3d at 456.
[29] We have carefully reviewed the Epperson defendants' additional arguments and determine they are without merit.