DONALD SCHUSTER, Petitioner, v. THE EIGHTH JUDI-
CIAL DISTRICT COURT OF THE STATE OF NEVADA, in
and for THE COUNTY OF CLARK, and THE HONOR-
ABLE DONALD M. MOSLEY, District Judge, Respon-
dents, and THE STATE OF NEVADA, Real Party in
Interest.

No. 47314

June 28, 2007                                          160 P.3d 873

*Cristalli & Saggese, Ltd.*, and *Michael V. Cristalli*, Las Vegas,
for Petitioner.

*Catherine Cortez Masto*, Attorney General, Carson City; *David
J. Roger*, District Attorney, *James Tufteland*, Chief Deputy District
Attorney, and *Christopher J. Owens*, Deputy District Attorney,
Clark County, for Real Party in Interest.

Before the Court EN BANC.

## OPINION

*Per Curiam:*

Donald Schuster has petitioned this court for a writ of mandamus or prohibition, alleging that the district court erred in denying his pretrial petition for a writ of habeas corpus and/or motion to dismiss a grand jury indictment. Specifically, Schuster requests this court to compel the district court to dismiss the indictment on the ground that the State improperly refused to instruct the grand jury on the law relating to self-defense.[1] Although we deny the pe-

---

[1]Schuster also contends that the State violated the grand jury's independence by seeking an indictment for open murder and failing to instruct on all lesser-included offenses of murder. This claim is without merit, and we do not discuss it further.

tition, we conclude that this claim presents a substantial legal issue warranting a published decision.[2]

## FACTS

In February 2006, the State commenced grand jury proceedings relating to crimes allegedly committed during an altercation involving Schuster, his brother, and three teenagers. One of the teenagers was fatally wounded by a gunshot fired by Schuster, and other participants were injured. The State presented the following evidence to the grand jury.

On January 21, 2006, Mark Strycharz called the police to complain about noise emanating from a party at the home of his next-door neighbor, 17-year-old Bradley Franklin. The next morning, Strycharz and his brother Schuster were standing in Strycharz's front yard when Franklin and two of his teenage friends, Nicholas Errichetto and Jon Michael Ginoulias, pulled into the driveway of Franklin's house. A physical confrontation soon erupted between the teenagers, Strycharz, and Schuster. At one point, Schuster ran into Strycharz's house and returned armed with a gun. In the ensuing melee, Schuster fired three shots, fatally wounding Ginoulias and injuring Errichetto in the leg. The grand jury also heard testimony that Schuster fired a shot at Franklin; however, Franklin was uninjured.

Although Schuster did not testify before the grand jury, the State presented a videotape of his statement to the police.[3] Schuster told the police that he went into the house to get the gun because the teenagers were beating Strycharz. As he exited the house, Ginoulias "came at him," and he pulled the trigger. Schuster then proceeded to the backyard where his brother was still being beaten. Errichetto came at him, and Schuster pointed the gun at Errichetto's leg and fired. Schuster told police officers that he did not remember how many shots he fired but stopped once the teenagers ran away. Schuster explained that he did not intend to hurt anyone, he would not have fired the gun if he had not felt threatened, and he acted to protect Strycharz. Strycharz testified at the grand jury hearing that immediately prior to hearing two to three gunshots, he was on the ground being beaten by the teenagers.

Ginoulias's autopsy revealed that he suffered injuries on his face, hands, and legs and, most significantly, a gunshot wound to his chest. The medical examiner concluded that Ginoulias died from the gunshot wound and that the manner of death was homicide.

The grand jury returned a true bill charging Schuster with one count of murder with the use of a deadly weapon, two counts of at-

---

[2]We deny Schuster's motion for a stay of the trial scheduled below.

[3]A transcript of that statement has been provided to this court in the petition.

tempted murder with the use of a deadly weapon, one count of battery with the use of a deadly weapon, and one count of assault with the use of a deadly weapon.

On March 30, 2006, Schuster filed a pretrial petition for a writ of habeas corpus and/or motion to dismiss the indictment, which the district court denied on May 30, 2006. He thereafter filed the instant original petition for a writ of mandamus or prohibition in this court.

## DISCUSSION

This court may issue a writ of mandamus to compel the performance of an act which the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion.[4] Mandamus is an extraordinary remedy, and it is within the discretion of this court to determine if a petition will be considered.[5] A writ of prohibition may issue to arrest the proceedings of a district court exercising its judicial functions when such proceedings are in excess of its jurisdiction.[6] Neither writ will issue, however, if there is "a plain, speedy and adequate remedy in the ordinary course of law."[7] Where the circumstances establish urgency or strong necessity, or an important issue of law requires clarification and public policy is served by this court's exercise of its original jurisdiction, this court may exercise its discretion to consider a petition for extraordinary relief.[8]

The specific issue presented in the instant petition is whether the duty imposed upon the State under NRS 172.145(2) to present known exculpatory evidence to the grand jury also requires the State to instruct the grand jury on the law relating to self-defense. This court has not previously addressed this question in a published decision, and we now clarify that such instructions are not required.

Schuster contends that because NRS 172.145(2) requires the State to submit known exculpatory evidence to the grand jury, the statute must also be construed to obligate the State to instruct the grand jury on the law of self-defense. Statutory construction in-

---

[4]State v. Dist. Ct. (Epperson), 120 Nev. 254, 258, 89 P.3d 663, 665-66 (2004).

[5]Poulos v. District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982).

[6]NRS 34.320; Epperson, 120 Nev. at 258, 89 P.3d at 666.

[7]NRS 34.170; NRS 34.330.

[8]Walker v. Dist. Ct., 120 Nev. 815, 819, 101 P.3d 787, 790 (2004).

volves a question of law, and this court reviews the statute under scrutiny de novo, without deference to the district court's conclusions.[9] "In construing a statute, our primary goal is to ascertain the [L]egislature's intent in enacting it, and we presume that the statute's language reflects the [L]egislature's intent."[10] " 'Generally, when the words in a statute are clear on their face, they should be given their plain meaning unless such a reading violates the spirit of the act.' "[11] As a general rule, this court construes inconsistencies or ambiguities in criminal provisions in the defendant's favor.[12]

Therefore, we first examine the plain language of NRS 172.145(2) to decipher its meaning. The statute provides that "[i]f the district attorney is aware of any evidence which will explain away the charge, he shall submit it to the grand jury." "Exculpatory evidence is defined as evidence that will explain away the charge."[13] The statute is silent as to whether the State's obligation to present exculpatory evidence includes the concomitant duty to instruct the grand jury on the law relating to self-defense. Although such instructions would not necessarily be inconsistent with NRS 172.145(2), because the plain language of the statute does not expressly impose such a duty on the State, Schuster must demonstrate that the duty arises from some other source.

Schuster's primary contention in this respect is that obligating the State to present exculpatory evidence to the grand jury without also requiring the State to instruct the grand jury on the legal effect of such evidence is an absurdity.[14] Schuster argues that the State's duty to inform the grand jury of exculpatory evidence is meaningless unless the State is also required to advise the grand jury on the law respecting the legal significance of that evidence. We reject this contention. Schuster has failed to establish that, in enacting the statutory scheme regulating the grand jury process, the Legislature intended to expand the role of the grand jury beyond its historical, traditional investigative and accusatory function.

---

[9]*Id.* at 819, 101 P.3d at 790.

[10]*Moore v. State*, 117 Nev. 659, 661, 27 P.3d 447, 449 (2001).

[11]*Speer v. State*, 116 Nev. 677, 679, 5 P.3d 1063, 1064 (2000) (quoting *Anthony Lee R., A Minor v. State*, 113 Nev. 1406, 1414, 952 P.2d 1, 6 (1997)).

[12]*Bergna v. State*, 120 Nev. 869, 873, 102 P.3d 549, 551 (2004).

[13]*King v. State*, 116 Nev. 349, 359, 998 P.2d 1172, 1178 (2000); *see* NRS 172.145.

[14]*See Wilson v. State*, 121 Nev. 345, 357, 114 P.3d 285, 293 (2005) (stating that a statute should be interpreted to avoid absurd results), *cert. denied*, 546 U.S. 1040 (2005); *Hunt v. Warden*, 111 Nev. 1284, 1285, 903 P.2d 826, 827 (1995).

*The relevant statutory scheme*

In defining the powers of the grand jury, NRS 172.105 directs that the grand jury "may inquire into all public offenses triable in the district court or in a Justice Court, committed within the territorial jurisdiction of the district court for which it is impaneled." NRS 172.095(1)(a) provides that the grand jury "must be charged by the court" and that the court shall provide "the grand jurors such information as is required by law and any other information it deems proper regarding their duties and any charges for public offenses returned to the court or likely to come before the grand jury." NRS 172.145(1) provides that although the grand jurors are "not bound to hear evidence for the defendant," they nonetheless have a duty "to weigh all evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they shall order that evidence to be produced." NRS 172.155(1) explains that a "grand jury ought to find an indictment when all the evidence before [it], taken together, establishes probable cause to believe that an offense has been committed and that the defendant has committed it."[15] The finding of probable cause "does not involve a determination of the guilt or innocence of an accused,"[16] and this court has consistently held that to secure an indictment, the State is not required to negate all inferences which might explain away an accused's conduct.[17] This court has further held that "it is not mandatory for the prosecuting attorney to instruct the grand jury on the law."[18]

Thus, our review of the statutory scheme regulating the grand jury process reveals that the Legislature viewed the primary role of the grand jury as investigative and accusatory. That is to say, the primary function of the grand jury in Nevada is to investigate, obtain, and review evidence, and based on that evidence, to determine whether there is probable cause to believe that a crime has been committed and that a particular person or persons committed it. Schuster has pointed us to no other statutory provision or legislative history suggesting that the Legislature intended that the State's obligation to submit known exculpatory evidence to the grand jury should include the attendant duty to instruct the jury on the legal significance of that evidence.

---

[15]*Sheriff v. Dhadda*, 115 Nev. 175, 180, 980 P.2d 1062, 1065 (1999).

[16]*Sheriff v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) (citations omitted).

[17]*E.g., Sheriff v. Shade*, 109 Nev. 826, 828-29, 858 P.2d 840, 842 (1993); *Sheriff v. Miley*, 99 Nev. 377, 379, 663 P.2d 343, 344 (1983); *Kinsey v. Sheriff*, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971).

[18]*Hyler v. State*, 93 Nev. 561, 564, 571 P.2d 114, 116 (1977); *Phillips v. State*, 93 Nev. 309, 311-12, 565 P.2d 330, 331-32 (1977).

*Our statutes are consistent with the traditional role of the grand jury*

To the contrary, our statutes and case law addressing grand juries generally reflect the historical view that they are investigative and accusatory bodies, rather than adjudicatory ones.[19] As the United Supreme Court has recognized:

> It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. That has always been so; and to make the assessment it has always been thought sufficient to hear only the prosecutor's side. As Blackstone described the prevailing practice in 18th-century England, the grand jury was "only to hear the evidence on behalf of the prosecution[,] for the finding of an indictment is only in the nature of an enquiry or accusation, which is afterwards to be tried and determined." So also in the United States. According to the description of an early American court, three years before the Fifth Amendment was ratified, it is the grand jury's function not "to enquire . . . upon what foundation [the charge may be] denied," or otherwise to try the suspect's defenses, but only to examine "upon what foundation [the charge] is made" by the prosecutor.[20]

Although Nevada law requires the State to present exculpatory evidence to a grand jury, requiring the State to also instruct a grand jury on the legal significance of exculpatory evidence simply does not comport with the traditional investigative, accusatory role of a grand jury. Rather, the full presentation and credibility of an accused's defense are matters reserved for the adversarial process of trial.[21] In sum, Schuster has not demonstrated any grounds in the United States or Nevada Constitutions, or in the Nevada statutory scheme regulating grand juries, justifying a conclusion that the State has a duty to instruct a grand jury on the legal significance

---

[19]*United States v. Williams*, 504 U.S. 36, 51 (1992); *Sheriff v. Bright*, 108 Nev. 498, 501, 835 P.2d 782, 784 (1992).

[20]*Williams*, 504 U.S. at 51-52 (citations omitted); *see also Costello v. United States*, 350 U.S. 359, 361-62 (1956) (stating that neither the Fifth Amendment, which provides that federal prosecutions for capital or otherwise infamous crimes must be instituted by presentments or indictments of grand juries, "nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); *United States v. Ruyle*, 524 F.2d 1133, 1135 (6th Cir. 1975) ("The function of a grand jury is investigative. Its proceedings are not adversary in nature, but rather consist of inquiries conducted by laymen without resort to the technicalities of trial procedure.").

[21]We have held, however, that "the grand jury may request advice and that the prosecutor is authorized to explain matters of law." *Sheriff v. Keeney*, 106 Nev. 213, 218, 791 P.2d 55, 58 (1990).

of any exculpatory evidence.[22] Absent explicit statutory authority, and in light of the traditional view of the grand jury as an investigative, accusatory body, rather than an adjudicative one, this court will not construe NRS 172.145 to include such a duty.

## CONCLUSION

We have previously expressed an unwillingness to expand the rights of grand jury targets beyond those explicitly provided by statute or constitutionally required.[23] Consistent with that approach, we now expressly hold that Nevada's statutory scheme regulating grand juries does not impose an independent, mandatory duty upon the State to instruct the grand jury on the legal significance of exculpatory evidence.[24] Accordingly, we deny Schuster's petition for a writ of mandamus or prohibition.

---

[22]*See* U.S. Const. amend. V; Nev. Const. art. 1, § 8.

[23]*See Gordon v. Ponticello*, 110 Nev. 1015, 1017-19, 879 P.2d 741, 743 (1994) (stating that discovery does not fall within the scope of rights afforded to persons under grand jury investigation); *Bright*, 108 Nev. at 502, 835 P.2d at 785 (declining to extend the right to counsel to indigent grand jury targets).

[24]*Accord State v. Augustin M.*, 68 P.3d 182, 187-88 (N.M. Ct. App. 2003) (holding that New Mexico's rule that the State must present known evidence that directly negates a target's guilt does not extend to instructions respecting possible defenses).