129 Nev., Advance Opinion 48

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| BRYAN CLAY,<br>Petitioner,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT<br>COURT OF THE STATE OF NEVADA,<br>IN AND FOR THE COUNTY OF<br>CLARK; AND THE HONORABLE<br>JAMES M. BIXLER, DISTRICT JUDGE,<br>Respondents,<br>   and<br>THE STATE OF NEVADA,<br>Real Party in Interest. | No. 61986 |



FILED

JUL 11 2013

Original petition for a writ of mandamus or prohibition challenging an order of the district court denying a pretrial petition for a writ of habeas corpus.

*Petition granted in part.*

Patti, Sgro & Lewis and Anthony P. Sgro, Las Vegas; Christopher R. Oram, Las Vegas,
for Petitioner.

Catherine Cortez Masto, Attorney General, Carson City; Steven Wolfson, District Attorney, and Jonathan E. VanBoskerck, Chief Deputy District Attorney, Clark County,
for Real Party in Interest.

---

BEFORE GIBBONS, PARRAGUIRRE and DOUGLAS, JJ.

*OPINION*

By the Court, DOUGLAS, J.:

Nevada law requires a district attorney to "inform the grand jurors of the specific elements of any public offense which they may

13-20251

consider as the basis of the indictment." NRS 172.095(2). In this original writ proceeding, we consider whether the district attorney violates this requirement when he or she seeks an indictment for child abuse or neglect under NRS 200.508(1) based on a nonaccidental physical injury but fails to inform the grand jurors of the definition of "physical injury" set forth in NRS 200.508(4)(d). We conclude that regardless of the theory pursued under NRS 200.508(1), "abuse or neglect" is an element of the offense and that when the alleged "abuse or neglect" is based on a nonaccidental physical injury, the district attorney must inform the grand jurors of the statutory definition of "physical injury" because that definition is more limited than the meaning that a layperson would attribute to the term. Because the failure to inform the grand jurors of the statutory definition of "physical injury" likely caused the grand jury to return an indictment on less than probable cause for one of the two counts of child abuse, we grant the petition as to that count.

## FACTS AND PROCEDURAL HISTORY

Petitioner Bryan Clay was indicted by a grand jury for two counts of child abuse and neglect in violation of NRS 200.508(1), for slapping and hitting his 16-year-old girlfriend on February 14, 2012 (count one), and March 15, 2012 (count three). The only witness to testify before the grand jury about the events which transpired in February and March was Clay's girlfriend, E.F.

E.F. was pregnant with Clay's child. The first charged incident of abuse occurred two days after she told him about the pregnancy. Clay slapped her across the face during an argument. The second charged incident occurred the following month. After the couple attended a prenatal appointment, E.F. told Clay that she did not want to be with him anymore, and Clay told her that if she left him, he would kill

himself. As E.F. walked away, Clay walked up behind her, grabbed her by the neck with one hand, choked her, and threw her into a gate. When E.F. continued to ignore him, he started hitting her with a closed fist in her face, legs, arms, stomach, and back. E.F. fell to the ground and covered her stomach with her hands. Clay then grabbed her by the hair and shoved her face into the concrete. Clay tried to move E.F.'s hands from her stomach and told her that if he could not have her and his child, then he did not want anyone else to have them either. When a woman came over to tell him to stop, Clay took E.F.'s purse and left. By the time E.F. got home, the police had already arrived. E.F. testified that she attempted to tell the police what happened, but she still could not breathe. An ambulance took E.F. to the hospital, but she did not stay. There was no testimony about the nature of E.F.'s injuries resulting from either of the altercations.

Following the return of the indictment, Clay filed a pretrial petition for a writ of habeas corpus challenging the indictment on two grounds. First, he argued that there was insufficient evidence to support a finding of probable cause as to the two counts of child abuse and neglect because there was no evidence of a nonaccidental physical or mental injury and therefore the State failed to prove that abuse or neglect occurred. Second, he argued that the State failed to comply with the requirements of NRS 172.095(2) by not instructing the jury on the definition of "physical injury" as used in the applicable child-abuse-and-neglect statute. In its response, the State argued that the "showing of physical or mental injury is not a requirement" of the child-abuse-and-neglect statute; rather, the mere possibility of physical or mental injury is sufficient. The State did not respond to Clay's NRS 172.095(2) argument.

The district court orally denied the petition with little analysis or explanation other than observing that the child-abuse-and-neglect statute "is a very liberally-written statute, and probably for good reason" and summarily agreeing with the State's argument. Like the State, the district court did not discuss the merits of Clay's NRS 172.095(2) argument. Clay then filed this original petition for a writ of mandamus or prohibition challenging the district court's decision.

## DISCUSSION

A writ of mandamus may issue to compel the performance of an act which the law requires "as a duty resulting from an office, trust or station," NRS 34.160, or to control an arbitrary or capricious exercise of discretion, *see Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).[1] The writ will not issue, however, if the petitioner has a plain, speedy, and adequate remedy in the ordinary course of the law. *See* NRS 34.170. Here, Clay has another remedy because a violation of NRS 172.095(2) can be reviewed on direct appeal from a final judgment of conviction. *See* NRS 177.045. Nonetheless, that remedy may not be adequate because any error in the grand-jury proceeding is likely to be harmless after a conviction. *Lisle v. State*, 114 Nev. 221, 224-25, 954 P.2d 744, 746-47 (1998). We therefore have recognized that "[a] writ of mandamus is an appropriate remedy for [violations of grand-jury procedures]." *Lisle v. State*, 113 Nev. 540, 551,

---

[1]We focus on Clay's request for a writ of mandamus as he has not asserted a claim that challenges the district court's jurisdiction. *See* NRS 34.320 (providing that writ of prohibition is available to halt proceedings occurring in excess of a court's jurisdiction).

 

937 P.2d 473, 480 (1997), *clarified on rehearing*, 114 Nev. 221, 954 P.2d 744 (1998).

Mandamus, however, is an extraordinary remedy. Accordingly, it is within the discretion of this court to determine if a petition will be considered. *See Poulos v. Eighth Judicial Dist. Court*, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982); *see also State ex rel. Dep't of Transp. v. Thompson*, 99 Nev. 358, 360, 662 P.2d 1338, 1339 (1983). In exercising that discretion, we must "consider[ ] whether judicial economy and sound judicial administration militate for or against issuing the writ." *Redeker v. Eighth Judicial Dist. Court*, 122 Nev. 164, 167, 127 P.3d 520, 522 (2006), *limited on other grounds by Hidalgo v. Eighth Judicial Dist. Court*, 124 Nev. 330, 341, 184 P.3d 369, 377 (2008). "Where the circumstances establish urgency or strong necessity, or an important issue of law requires clarification and public policy is served by this court's exercise of its original jurisdiction, this court may exercise its discretion to consider a petition for extraordinary relief." *Schuster v. Eighth Judicial Dist. Court*, 123 Nev. 187, 190, 160 P.3d 873, 875 (2007).

Applying these considerations, we exercise our discretion to consider the petition as to the alleged violation of NRS 172.095(2).[2] On

---

[2]To the extent that Clay's petition is framed as a challenge to the district court's conclusion that there was slight or marginal evidence supporting the grand jury's indictment, we decline to exercise our discretion to consider the petition. *See Kussman v. Eighth Judicial Dist. Court*, 96 Nev. 544, 546, 612 P.2d 679, 680 (1980) (explaining that judicial economy and sound administration of justice generally militate against the use of mandamus to review pretrial probable-cause determinations). In this opinion, we address the evidence presented and the probable-cause determination only in the context of deciding whether the failure to

*continued on next page...*

that issue, the petition raises important legal questions as to what the prosecution must inform the grand jurors of under NRS 172.095(2) when the grand jury is considering whether to indict a person for a violation of NRS 200.508(1).

This court has held as a general proposition that "it is not mandatory for the prosecuting attorney to instruct the grand jury on the law." *Hyler v. Sheriff, Clark Cnty.*, 93 Nev. 561, 564, 571 P.2d 114, 116 (1977) (citing *Phillips v. Sheriff, Clark Cnty.*, 93 Nev. 309, 311-12, 565 P.2d 330, 331-32 (1977)). Although the general proposition still holds true, *see Schuster*, 123 Nev. at 192, 160 P.3d at 876-77 (rejecting argument that prosecutor must instruct grand jury on legal significance of exculpatory evidence), there is a limited instance in which the prosecuting attorney *is* required to inform the grand jury as to the law. Almost a decade after our early pronouncement of the general proposition in *Hyler*, the Nevada Legislature enacted NRS 172.095(2). 1985 Nev. Stat., ch. 367, § 6, at 1029. This statute requires the prosecutor to "inform the grand jurors of the specific elements of any public offense which they may consider as the basis of the indictment" before seeking an indictment. To determine whether the prosecution failed to comply with NRS 172.095(2) by not informing the grand jurors as to the statutory definition of "physical injury," we must first determine whether "physical injury" is an element of the charged offenses under NRS 200.508(1), which involves statutory interpretation.

---

*...continued*
comply with NRS 172.095(2) undermined the integrity of the grand-jury proceeding.

"We review questions of statutory interpretation de novo." *Bigpond v. State*, 128 Nev. ___, ___, 270 P.3d 1244, 1248 (2012). When interpreting a statutory provision, this court looks first to the plain language of the statute. *Id.* "This court avoids statutory interpretation that renders language meaningless or superfluous and if the statute's language is clear and unambiguous, this court will enforce the statute as written." *In re George J.*, 128 Nev. ___, ___, 279 P.3d 187, 190 (2012) (internal quotation marks and alterations omitted). "Likewise, this court will interpret a rule or statute in harmony with other rules and statutes." *Id.* (internal quotation marks omitted).

*Interpretation of NRS 200.508(1)*

Applying these rules of statutory interpretation, we necessarily start with the statutory language. NRS 200.508(1) provides in relevant part that

> [a] person who willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect [is guilty of a felony].

NRS 200.508(1) thus sets forth alternative means of committing the offense. The first requires the State to prove that (1) a person willfully caused (2) a child who is less than 18 years of age (3) to suffer unjustifiable physical pain or mental suffering (4) as a result of abuse or neglect. The second requires the State to prove that (1) a person willfully caused (2) a child who is less than 18 years of age (3) to be placed in a situation where the child may suffer physical pain or mental suffering (4) as the result of abuse or neglect. The fourth element of both alternatives,

"abuse or neglect," is specifically defined by NRS 200.508(4)(a). Based on NRS 200.508(4)(a) and the statutes referenced therein, NRS 200.508(1) criminalizes five different kinds of abuse or neglect: (1) nonaccidental physical injury, (2) nonaccidental mental injury, (3) sexual abuse, (4) sexual exploitation, and (5) negligent treatment or maltreatment. The first type of abuse or neglect—nonaccidental physical injury—is implicated in this case.[3] "Physical injury" is defined in NRS 200.508(4)(d) as "[p]ermanent or temporary disfigurement" or "[i]mpairment of any bodily function or organ of the body."

Clay asserts that NRS 200.508(1) requires the State to prove that "abuse or neglect" occurred regardless of which alternative is charged; thus, in this case, the State had to prove "physical injury." Relying on the second means of violating NRS 200.508(1), the State argues that it only had to prove that Clay caused the victim to be placed in a situation where she may suffer physical pain or mental suffering, and therefore, it did not have to prove that "physical injury" occurred.

The State's argument does not take account of the "result of abuse or neglect" language in both provisions under NRS 200.508(1). A plain reading of NRS 200.508(1) leads to the conclusion that the State must prove that "abuse or neglect" occurred under both means of violating the statute.[4] We find support for this conclusion in the Legislature's use of

---

[3]The grand jury was informed that "child abuse" is a nonaccidental physical injury to a child, and the allegations in the indictment focus on this kind of abuse.

[4]This conclusion is also supported by the statute's legislative history. As originally codified, NRS 200.508 punished a parent or guardian for causing or permitting eight different types of harm. *See* 1971 Nev. Stat., ch. 398, § 1, at 772-73. Notably, this version only required one of the eight

*continued on next page...*

the same language—may suffer physical pain or mental suffering as the result of abuse or neglect—in subsection 2 of the same statute. NRS 200.508(2) punishes a person who is responsible for a child's safety or welfare and "allows" or "permits" a child "to be placed in a situation where the child *may suffer physical pain or mental suffering as the result of abuse or neglect*." (Emphasis added.) When the Legislature bifurcated the child-abuse-and-neglect statute in 1985 to distinguish between persons who cause abuse or neglect and those who passively permit abuse or neglect, *see generally Ramirez v. State*, 126 Nev. ___, ___, 235 P.3d 619, 623 (2010), it added the word "allow," 1985 Nev. Stat., ch. 455, § 88, at 1399-1400, and included a definition of "allow" that assumes that abuse or neglect has occurred, *see* NRS 200.508(4)(b) ("'Allow' means to do nothing to prevent or stop the abuse or neglect of a child in circumstances where the person knows or has reason to know the child *is* abused or neglected." (emphasis added)). That definition of "allow" supports the conclusion that the language at issue still requires the State to prove that "abuse or neglect"

---

*...continued*

types of harm to be the "result of abuse or neglect." In 1977, the Legislature overhauled NRS 200.508, requiring for the first time that all of the types of harm listed in NRS 200.508 be the "result of abuse or neglect" as defined by statute. *See* 1977 Nev. Stat., ch. 383, § 4, at 738. In that revision, the Legislature replaced "causes . . . such a child to be placed in such situation that its life or limb *may* be in danger or its health *likely* to be injured" with "causes . . . a child to be placed in a situation where the child may suffer physical pain or mental suffering as *the result* of abuse or neglect." *Id.* (Emphases added.) After this revision, the statute required one of the defined acts of abuse or neglect to occur regardless of which theory of liability the State pursued.

occurred regardless of the theory on which an offense under subsection 1 is prosecuted.

It is this "abuse or neglect" element that in some cases will result in the State presenting evidence that shows actual physical pain or mental suffering even though it is proceeding under the second theory in NRS 200.508(1). The best example is where, as here, the alleged "abuse or neglect" is based on a nonaccidental physical injury. *See* NRS 200.508(4)(a). In that situation, the State must prove that the victim suffered "[p]ermanent or temporary disfigurement" or "[i]mpairment of any bodily function or organ of the body." NRS 200.508(4)(d). Evidence that meets this definition of physical injury oftentimes will also demonstrate that the victim suffered physical pain or mental suffering. But that is a by-product of the particular type of "abuse or neglect." The fact that this type of "abuse or neglect" often carries with it proof of actual physical pain or mental suffering that otherwise is not required under the second theory in subsection 1 does not allow us to ignore the plain language of NRS 200.508(1), which requires "abuse or neglect" under both theories.

The State suggests that an interpretation that would always require it to prove physical pain or mental suffering would reduce the second theory in NRS 200.508(1) to mere surplusage because it would add nothing to the first theory. We agree. Our interpretation of the statute, however, does not have that effect. The second theory retains significance because, in contrast to "abuse or neglect" based on physical injury, other types of "abuse or neglect" under NRS 200.508(4)(a) do not necessarily result in actual physical pain or mental suffering. Although those types of abuse or neglect could not lead to conviction under the first theory in NRS

SUPREME COURT
OF
NEVADA

(O) 1947A

10

200.508(1) if they did not result in physical pain or mental suffering, they can support a charge under the second theory so long as the child *may* suffer physical pain or mental suffering as a result of the abuse or neglect. A good example is abuse or neglect based on negligent treatment or maltreatment of a child. "[N]egligent treatment or maltreatment of a child" occurs if a child is "without proper care, control and supervision." NRS 432B.140, *listed in* NRS 200.508(4)(a). The definition of this kind of abuse or neglect encompasses conduct that does not necessarily result in actual physical pain or mental suffering. If there is no physical pain or mental suffering as a result of the negligent treatment or maltreatment, then the defendant cannot be charged under the first theory of liability in NRS 200.508(1). But criminal liability will still attach in that scenario under the second theory in subsection 1 if the defendant placed the child in a situation where the child *may* suffer physical pain or mental suffering as the result of the negligent treatment or maltreatment. For this reason, we see no merit in the State's argument that an "intoxicated driver [could] raise a 'no harm, no foul' defense" to a charge under NRS 200.508(1) when he places his child in a car and then drives without an accident. A child who is placed in a car by an intoxicated driver is without proper care, control, or supervision under circumstances which indicate that the child's health or welfare is threatened with harm. *See* NRS 200.508(4)(a); NRS 432B.140. The driver thus has placed the child in a situation where the child may suffer physical pain or mental suffering as a result. Our interpretation of the statute gives meaning to both provisions.

We conclude that NRS 200.508(1) unambiguously requires the State to prove that "abuse or neglect," as defined by NRS 200.508(4)(a), occurred regardless of the theory under which the offense is prosecuted.

Because the State alleged that the nonaccidental physical injury kind of abuse and neglect occurred, "physical injury" was an element of the offense for which the State sought an indictment. We turn then to whether the district attorney was required to instruct the grand jurors on the statutory definition of "physical injury."

*Application of NRS 172.095(2)*

NRS 172.095(2) provides that "[b]efore seeking an indictment, . . . the district attorney shall inform the grand jurors of the specific elements of any public offense which they may consider as the basis of the indictment." Clay argues that the State was required by NRS 172.095(2) to inform the grand jurors that "physical injury" is defined by the child-abuse-and-neglect statute as "permanent or temporary disfigurement" or "impairment of any bodily function or organ of the body." The State argues that it complied with the statute because it provided instructions to the jury, and it asked the grand jury if it had any questions about those instructions. We conclude that the State neglected its duty under the statute.

We have not addressed the requirements of NRS 172.095(2) in any significant detail since its enactment. Nevada is among several jurisdictions that require the prosecutor to instruct the grand jury on the elements of the crime, *see, e.g., People v. Calbud, Inc.*, 402 N.E.2d 1140, 1144 (N.Y. 1980), and cases from those jurisdictions provide some guidance as to the scope of the prosecutor's duty to instruct the grand jurors here in Nevada. In New York, the test is whether "the integrity of [the grand jury] has been impaired," meaning that misleading or incomplete instructions likely caused the grand jury to return an indictment on less than probable cause. *Id.* (explaining that "it may fairly

be said that the integrity of [the grand jury] has been impaired" "[w]hen the District Attorney's instructions to the Grand Jury are so incomplete or misleading as to substantially undermine [its] essential function"); *People v. Ramos*, 637 N.Y.S.2d 93, 93 (App. Div. 1996) (dismissing indictment because grand jury determination "hinged upon the definition" of a term and "the prosecutor's instructions to the Grand Jury . . . did not provide it 'with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime'" (quoting *Calbud, Inc.*, 402 N.E.2d at 1143)); *cf. People v. Gnass*, 125 Cal. Rptr. 2d 225, 252, 254, 258 (Ct. App. 2002) (withholding of certain instructions in a manner that may mislead the grand jury about an element of the crime is error and should result in dismissal where the error is likely to have caused the grand jury to return an indictment on less than probable cause).

This focus on the integrity of the grand-jury proceedings is consistent with the Nevada Legislature's concerns in adopting NRS 172.095(2). The statute was part of a series of bills adopting various provisions of the American Bar Association's principles of grand jury reform. *See* Hearing on S.B. 107 Before the Senate Judiciary Comm., 63d Leg. (Nev., March 4, 1985) (statement of subcommittee member Senator Sue Wagner). The statute is based on the principle that "[t]he grand jury shall be informed as to the elements of the crimes considered by it," *ABA Grand Jury Policy and Model Act*, Grand Jury Principles, Principle 27, at 5 (2d ed. 1982), and was intended to add an element of fairness to grand-jury proceedings by providing instruction in complex cases so that laypersons with no background in the law would know what to look for

from the witnesses appearing before them, *id.* at 12 (commentary to Principle 27); *see also* Hearing on S.B. 107 Before the Senate Judiciary Comm., 63d Leg. (Nev., March 6, 1985) (statement of Principal Deputy, Legislative Counsel, Kim Morgan and Senator Sue Wagner) ("[I]t was the intent of the subcommittee to clarify the elements of a crime to the grand jurors . . . a layman reading a statute probably cannot pick out each specific element . . . if you were not familiar with the law, the elements would be hard to understand."). Consistent with those legislative concerns underlying the statute, we agree that the focus should be on the effect that misleading or omitted instructions on the elements of the offense had on the integrity of the grand-jury proceedings.

Here, the grand jury was instructed that "'[c]hild abuse' means physical injury of a non-accidental nature to a child under the age of 18 years. If a person willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain as a result of abuse, that person has committed child abuse." The grand jury was not informed of the statutory definition of the term "physical injury"—permanent or temporary disfigurement or impairment of any bodily function or organ of the body. If that definition is not technical and reflects a layperson's common understanding of the term, then the State is correct that the prosecutor's failure to instruct the grand jurors on the statutory definition of this element does not warrant dismissal. *Cf. People v. Woodring*, 850 N.Y.S.2d 809, 812 (App. Div. 2008) (affirming the denial of motion to dismiss where statutory definition of the term was "not technical and reflects a lay person's common understanding of the term"). We cannot, however, conclude that the statutory definition reflects a layperson's common understanding of the term "physical injury."

The statutory definition of "physical injury" set forth in NRS 200.508(4)(d) is more limited than a layperson's common understanding of the term. "[I]njury" is commonly defined as "[d]amage or harm done to . . . a person" or "a particular form of hurt, damage, or loss." *The American Heritage Dictionary of the English Language* 930 (3d ed. 1996); *see also Merriam-Webster's Collegiate Dictionary* 644 (11th ed. 2003) ("[a]n act that damages or hurts" or "hurt, damage, or loss sustained"). The statutory definition is more specific and narrow than the common definition. The definition in NRS 200.508(4)(d) also is narrower than the definition used elsewhere in Nevada statutes. *E.g.*, NRS 432B.090 (including six additional definitions for the term "physical injury," including "[a] cut, laceration, puncture or bite"). We are convinced that the statutory definition in NRS 200.508(4)(d) is technical and does not reflect a layperson's common understanding of the term "physical injury."

Despite the difference between the common understanding of the term "physical injury" and its statutory definition under the child-abuse-and-neglect statute, the State argues that the charges should not be dismissed because the prosecutor provided instructions to the grand jury and asked the grand jurors if they had any questions about those instructions. Relying on *Gordon v. Eighth Judicial District Court*, 112 Nev. 216, 913 P.2d 240 (1996), the State argues that this was sufficient to comply with the statute. In *Gordon*, we held that the district attorney complied with NRS 172.095(2) even though he did not provide the grand jurors with an elements instruction because the district attorney read the charges to the grand jury, explained how they interrelated in layperson's terms, and asked the grand jurors if they had any questions. 112 Nev. at 225, 913 P.2d at 246. Here, neither the proposed indictment nor the

instructions provided the statutory definition of "physical injury," and there was no discussion or explanation of this definition or any of the other elements of the child-abuse-and-neglect statute in layperson's terms. Accordingly, *Gordon* does not control our decision in this case.

Given the difference between the statutory and common definition of "physical injury," it was incumbent upon the prosecutor to provide the statutory definition of this element consistent with NRS 172.095(2). Because the prosecutor failed to provide the grand jurors with that definition, we must determine whether this error is likely to have caused the jury to return an indictment on less than probable cause. We turn then to the evidence presented in support of the indictment.

Although there was strong evidence to support a charge of domestic battery for the second altercation, *see* NRS 200.481; NRS 33.018, there was little evidence presented to the grand jury about the type of injury suffered by Clay's girlfriend. A grand jury, however, needs only slight or marginal evidence to return an indictment. *Sheriff, Washoe Cnty. v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) ("The finding of probable cause may be based on slight, even marginal evidence, because it does not involve a determination of the guilt or innocence of an accused." (internal quotation marks and citation omitted)). Because a properly instructed grand jury could have found slight or marginal evidence of "[i]mpairment of any bodily function or organ of the body," NRS 200.508(4)(d)(2), based on E.F.'s testimony that she had difficulty breathing when she was telling police officers about the second altercation, we cannot say that the State's failure to inform the grand jurors about the definition of "physical injury" caused the grand jury to

return an indictment on less than probable cause for this count (count three).

The same cannot be said for the other child-abuse-and-neglect count. The only evidence supporting the first count of abuse and neglect was E.F.'s testimony that Clay slapped her across the face. E.F. did not testify to the nature or extent of any "physical injury" as a result of the slap. Applying a common understanding of the term "physical injury," the grand jury could have concluded that there was slight or marginal evidence of damage or harm done to E.F. But given the limited testimony, we are not convinced that it likely would have concluded that there was slight or marginal evidence of "[p]ermanent or temporary disfigurement" or "[i]mpairment of any bodily function or organ of the body." NRS 200.508(4)(d). Because the failure to instruct the grand jury on the statutory definition of "physical injury" likely caused the grand jury to return an indictment on count one based on less than probable cause, the violation of NRS 172.095(2) requires dismissal of that count.

The district court's failure to recognize these errors may not have amounted to a manifest abuse of discretion with respect to count three, but its failure to address the State's violation of NRS 172.095(2) and decision to accept the State's erroneous interpretation of the child-abuse-and-neglect statute with respect to count one was a manifest abuse of its discretion which adversely affected Clay's right to a grand jury determination based upon probable cause. *See State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. ___, ___, 267 P.3d 777, 780 (2011) (defining manifest abuse of discretion as clearly erroneous interpretation or application of a law or rule). We therefore grant Clay's petition for

extraordinary relief, in part, and direct the clerk of this court to issue a writ of mandamus instructing the district court to dismiss count one of the indictment without prejudice.

_____, J.
Douglas

We concur:

_____, J.
Gibbons

_____, J.
Parraguirre