SHERIFF, WASHOE COUNTY, NEVADA, APPELLANT, *v.* JERRY MILEY, RESPONDENT.

No. 14627

May 19, 1983                                      663 P.2d 343

*Mills B. Lane,* District Attorney, Washoe County, for Appellant.

*David G. Parraguirre,* Acting Public Defender, Washoe County, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

On August 4, 1982, Jerry Miley was charged by indictment with: (1) attempted murder in violation of NRS 200.010 and NRS 208.070; (2) child abuse causing substantial bodily and mental harm in violation of NRS 200.508; (3) lewdness with a child under the age of fourteen (14) in violation of NRS 201.230; and (4) battery with intent to commit sexual assault causing substantial bodily harm in violation of NRS 200.400(3). Thereafter, Miley petitioned the district court for a pretrial writ of habeas corpus contending that the evidence presented at the grand jury proceeding was insufficient to establish probable cause for the above four charges. After a hearing, the district court concluded that insufficient evidence was presented to support the charges of lewdness with a child under the age of fourteen and battery with intent to commit sexual assault. Accordingly, these charges were dismissed from the indictment and Miley was held for trial only on charges of attempted murder and child abuse. This appeal by the state followed. We reverse.

The evidence presented to the grand jury established that the victim, a 12-year-old female child, was staying at a motel one evening with her mother, her one-year-old sister, and Jerry Miley. The victim's mother had left the motel room, however, to go to work. The victim testified that she was lying on the bed

watching television. She was wearing a nightgown and underpants. Miley lunged at her and began choking her while pinning her legs to the bed. Additionally, she testified that Miley put a pillow over her face so she could not breathe. She lost and regained consciousness periodically during the attack. She awoke to find blood running from her nose, mouth and throat. She was still wearing her nightgown; it was covered with blood. An ambulance was called by a neighbor and the victim was taken to the hospital. The treating physician testified to her numerous injuries including blood in the white areas of her eyes, bruised areas on her face and abrasions on her neck. He noted that her injuries were consistent with strangulation. He also discovered a clear fluid at the entrance of her vagina which was sent for a sperm analysis.[1] He testified that the victim was not wearing underpants.

In grand jury proceedings, the state need only show that a crime has been committed and that the accused probably committed it. The finding of probable cause to support a criminal charge may be based on "slight, even 'marginal' evidence . . . because it does not involve a determination of the guilt or innocence of an accused." Sheriff v. Hodes, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980). "To commit an accused for trial, the State is not required to negate all inferences which might explain his conduct, but only to present enough evidence to support a reasonable inference that the accused committed the offense." Kinsey v. Sheriff, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971).

Our dissenting brethren view the majority holding as an assault on the integrity of this court's ruling in Sheriff v. Provenza, 97 Nev. 346, 630 P.2d 265 (1981). We do not so view it. The vitality of *Provenza* remains, including the standard of "substantial error" which it enjoins us to find as a predicate to overturning the granting of pretrial habeas petitions for a lack of probable cause. We must, however, apply that standard in the context of the state's burden to support a probable cause determination by evidence which is only "slight" or "marginal." Here, it is again noted that the record reflects the following salient testimony: (a) at the time the victim was attacked, there were three persons present (the victim, her one-year-old sister and Miley); (b) immediately prior to the attack, Miley was sitting at the head of the bed in his shorts, and the

---

[1] The results of this analysis were not introduced at the grand jury proceeding.

victim was lying at the foot of the bed in her underpants and nightgown watching television; (c) there had been no arguing between Miley and the victim; (d) without apparent provocation, Miley attacked the victim and commenced choking her and covering her face with a pillow; (e) the victim lost consciousness periodically during the attack and awoke from her final such episode to the screaming of her baby sister and the loud banging on the door by a neighbor; (f) the victim was bleeding from her nose and mouth, her nightgown was full of blood, and when the neighbor saw her he rushed to the phone; (g) the victim was taken to the hospital by ambulance; (h) the victim said she "couldn't tell" whether her underpants were on at the time she struggled from the bed to her neighbor at the door; (i) when the victim arrived at the hospital she heard someone "mention something" about her underpants; and (j) she had "no idea" where her underpants were finally discovered.

In light of the foregoing testimony, the "slight evidence" standard is clearly satisfied. It hardly offends reason to infer from the foregoing circumstances that Miley was sexually motivated to attack the child. She knew she was wearing her underpants prior to the assault, and although in her traumatized state immediately after reviving from her last period of unconsciousness she "couldn't tell" whether she was still wearing her underpants, it is most likely or at least inferable that she would have known thereafter if someone had removed them. At the time she was examined by the emergency room physician she was not wearing underpants and she had no idea what had happened to them. It would appear that one would have to strain to infer the likelihood of the removal of her underpants by ambulance personnel while enroute to the hospital. It seems equally strained to assume that the child, who was sufficiently alert to notice someone mentioning the subject of her underpants at the hospital, was unaware of the removal of this garment by hospital personnel if indeed such had occurred. The force of reason would thus seem to support the inference that the child's underpants were removed by Miley during the unprovoked assault. The fact that all other possible inferences are not eliminated by the testimony of record does not prevent a determination of probable cause. Kinsey v. Sheriff, *supra*.

The "slight evidence" standard is a salutary one which facilitates the legitimate public expectancy that persons charged with criminal conduct will be held to answer such charges when evidence exists upon which it may be reasonably inferred that the person so charged actually committed the offense. While considerations of judicial economy and fundamental fairness

are important, they must not outweigh the state's imperative to prosecute those who are fairly within the probable cause category. In the instant case, as in all others, the state will have to prove Miley's guilt beyond a reasonable doubt. It should be allowed the opportunity to do so.

Based on the evidence presented to the grand jury, we believe there was probable cause to indict Miley for lewdness with a child under the age of fourteen and battery with intent to commit sexual assault. Furthermore, under the circumstances presented here, we conclude that the district court committed substantial error in granting Miley's petition. *See* Sheriff v. Provenza, *supra.* Accordingly, the order granting the pretrial writ of habeas corpus is reversed. The charges of lewdness with a child under fourteen and battery with intent to commit sexual assault are hereby reinstated.[2]

MANOUKIAN, C. J., and MOWBRAY, J., concur.

SPRINGER, J., dissenting:

This is an appeal from an order granting a pretrial writ of habeas corpus. The order had the effect of dismissing two counts of a four-count indictment. The majority opinion holds that the district court committed "substantial error." I disagree and therefore dissent.

Three witnesses testified at the grand jury hearing in this case. The first witness was a doctor who examined and treated the victim in a hospital emergency room. The doctor found bruises and abrasions on the victim's face and neck. The doctor did not perform a pelvic examination, although there was a "clear fluid at the entrance to the vagina" which was sent for a sperm analysis. Neither the doctor nor any other witness was asked about the results of the sperm analysis, and there was no evidence as to the actual identity of the clear fluid. Finally, the doctor answered in the affirmative when asked whether the victim's injuries were "consistent with strangulation." The doctor was not asked, however, whether anything in the examination indicated a sexual assault.

The next witness was the victim, who testified that she and Miley were lying on a bed watching television when he suddenly grabbed her by the throat and choked her. Miley then partially covered the victim's face with a pillow, and the victim "blacked out on and off." The victim testified that every time she gained consciousness she was looking straight into Miley's

---

[2]In light of this disposition, we need not address appellant's request for permission to file briefs or, alternatively, to argue orally this appeal. NRS 34.380(5).

eyes and that he was choking her. Finally, the victim blacked out "for quite a while," and she woke to a banging on the door. At that time she was bleeding and injured, and she was still wearing her nightgown. The victim was taken in an ambulance to the hospital. The following testimony appears in the record with respect to the victim's underpants:

Q. Do you know whether or not you still had your underpants [when you woke up]?
A. I couldn't tell.
Q. Did you later find out something about your underpants?
A. Yeah. When I got to the hospital. I heard someone mention something about it.
Q. Where were your underpants finally discovered?
A. I have no idea.
Q. Okay. When you were laying on the bed watching television, you had them on, is that correct?
A. Yeah.
Q. Prior to Jerry starting to choke you?
A. Yeah.
Q. At any time do you recall taking them off?
A. No.

The final witness was the victim's mother. She testified that when she went to work on the night of the incident she left Miley in the motel room with the victim and her other one-year-old daughter. The mother received a call at work about the incident, so she left work and went to the motel. Detectives who were present at the motel room would not let her into the room, so she went to the hospital. The mother's testimony concluded primarily with a description of the victim's injuries.

Based on this grand jury transcript, the district court found that there was not sufficient evidence to hold Miley for trial on the charge of lewdness with a child under the age of 14, and on the charge of battery with intent to commit sexual assault. Accordingly, the district court granted a writ of habeas corpus as to those two charges only. The district court did not grant the writ as to the charges of attempted murder and child abuse causing substantial bodily harm.

This court has occasionally expressed the standard of review which should be used by a district court in its probable cause determinations, and I have no quarrel with the cases cited by the majority on that point. We have also, however, clearly expressed the standard of review which should be used by *this court* in its review of district court probable cause determinations. In that context we have held as follows:

Considerations of judicial efficiency provide an independent basis in support of our reluctance to review probable cause factual determinations in pretrial matters. [Citation omitted] . . . [B]road review by this Court of factual issues related to probable cause would in many instances be inconsistent with sound judicial administration.

The trial court is the most appropriate forum in which to determine factually whether or not probable cause exists. [Citation omitted] Absent a showing of substantial error on the part of the district court in reaching such determinations, this court will not overturn the granting of pretrial habeas petitions for lack of probable cause.

Sheriff v. Provenza, 97 Nev. 346, 347, 630 P.2d 265 (1981).

In the present case the district court based its ruling on "the unexplained absence of the victim's underpants." The district court reasoned that if the victim had testified that she woke up in a motel room without her underpants on, then evidence might have existed that Miley removed the victim's underpants. Without this testimony, however, and in the absence of any evidence in the record as to where the underpants were taken off, the record simply does not support any inferences relating to the underpants. Consequently, contrary to the conclusion of the majority, there was no evidence that Miley removed the victim's underpants.

Perhaps the most telling things about the weakness of the state's case on the sex charges were the prosecutor's failure to ask witnesses the most basic and crucial questions concerning the sexual aspect of the attack and the prosecutor's failure to introduce what would have been very important evidence on the sex charges.

As noted earlier, the prosecution did not ask the doctor what the results of the sperm test were, and no other witness was called to testify as to the results of the test. Furthermore, the prosecutor did not ask the doctor if the examination revealed any indication of sexual attack.

I also note that the prosecutor did not ask the victim whether Miley ever touched, or even attempted to touch, any portions of her body other than her throat and face.

Finally, the evidence was grossly inadequate with respect to the victim's underpants. The prosecutor did not question the victim fully on that point. In fact, the only adverse inferences from the colloquy between the prosecutor and the victim would arise from the *prosecutor's questions* rather than the victim's answers. The prosecutor may have raised some speculation by

his question as to where the underpants were "finally discovered," but the prosecutor never introduced evidence on the point. He did not ask the victim's mother where the underpants were found, he did not call any of the detectives to testify whether the underpants were found in the motel room, and he did not call the ambulance attendants to testify whether the victim was wearing underpants when she was picked up at the motel.

In my opinion, the district court would have committed error if the district court had *not* granted the writ on the two sex charges in this case. The district court was "unable to find even marginal evidence to support either" sex charge. Count III charges that the defendant removed the victim's undergarments for the purpose of sexual gratification (apparently while she was unconscious). The girl had an external examination of the pelvic area at the hospital, and at sometime during the course of the evening her underpants were removed by herself or persons unknown. There is no evidence that the defendant did anything of a sexual nature, including the charge contained in Count IV that he had the "intent . . . to commit sexual assault" on the girl. There is no sex in this case except possibly that which can be conjured by creative and overactive imaginations. In any event, surely the record is not so clear as to support the majority's finding that the district court's error was so "substantial" that reversal is warranted under *Provenza.*

I would affirm the ruling of the district court.

GUNDERSON, J., dissenting:

I most respectfully dissent.

In general, I concur in the views expressed by Justice Springer. I might deem it unnecessary to say, as he asserts, that "the district court would have committed error if the district court had *not* granted the writ on the two sex charges in this case." However, as Justice Springer contends, I am satisfied that, at least, the district court did not err in granting the writ as to the two sex charges but holding respondent to trial on the others.

In addition, I feel constrained to tender some observations concerning how I believe invading the legitimate domain of our trial court judges—as I view this court's decision in this case to do—will necessarily detract from the orderly and economical administration of justice. Justice Springer has pointed out our recent decision in Sheriff v. Provenza, 97 Nev. 346, 630 P.2d 265 (1981). In *Provenza,* we explicitly recognized that the trial

court is the most appropriate forum in which to determine factually whether or not probable cause exists. In such cases, we stated, we will not interfere with a district court's necessarily discretionary ruling "[a]bsent a showing of substantial error." 97 Nev. at 347. Yet, notwithstanding this declaration, the majority have today elected to overrule the district court in the instant case.

I feel sure no one will seriously contend that the evidence in the record before us comes anywhere close to a quantum sufficient to support a jury verdict on the two sex-related charges, if and when this case is brought to trial. Indeed, the majority themselves have acknowledged as much. Moreover, even some of the supposed "evidence" now in the record may well prove to be inadmissible. For example, although our colleagues in the majority mention a "clear fluid" on the victim's leg, the district judge probably perceived that to allow reference to such fluid at trial would be error, if test results are unavailable through fault of the State. *See* Crockett v. State, 95 Nev. 859, 603 P.2d 1078 (1979).

In pretrial habeas matters, the function of the district courts is to screen out cases in which the proof is so tenuous as not to justify a trial. In some cases, such as the instant one, a district judge's proper exercise of this function entails the exercise of considerable fortitude. Furthermore, unless district judges continue to show such fortitude, our trial courts will become clogged with accusations which, lacking evidentiary support, either cannot succeed at trial or else cannot be sustained on appeal. To the extent that this court induces district judges to clog our court system in this fashion, scarce resources will be diverted from processing other, more meritorious cases in an expeditious manner.

We therefore should not appear to fault or to exploit the district judge in this case, by declaring his discretionary ruling incorrect. Our *Provenza* decision articulates not only valid law but also sound policy. The surest way I can think of to discourage district judges from screening out tenuous accusations, through habeas corpus proceedings, is to convey the message that our court will be quick to locate error whenever a district court makes such a judgment call against the prosecution in a case involving ugly facts. Here, the alleged actions of the respondent tend to inflame persons of normal sensibilities. Still, while the record contains much to show a brutal physical assault, there is a paucity of evidence to show that the brutality was sexually related.

The district judge withstood the human temptation to cast

himself as "hard on crime," and held that this case should proceed only on those charges for which the prosecution had tendered meaningful proof, unencumbered by charges for which there appears to be dubious if any support. Measured by the substantial-error standard articulated in *Provenza,* this was a judgment which I am unable to declare unjustified.