SHERIFF, CLARK COUNTY, Appellant, v.
SETH FRANK, Respondent.

No. 17671

March 31, 1987                                        734 P.2d 1241

*Rex Bell,* District Attorney, Clark County, for Appellant.

*Jeffrey D. Sobel,* Las Vegas, for Respondent.

---

## OPINION

*Per Curiam:*

Respondent, Seth Frank, was charged by an indictment filed March 21, 1986, with one count of lewdness with a minor and once count of sexual assault on a child under the age of fourteen. *See* NRS 201.230; NRS 200.366(2)(c). Prior to trial, respondent challenged the indictment by way of a petition for a writ of habeas corpus. Among other contentions, he argued that the indictment was invalid because the district attorney (1) improperly withheld exculpatory evidence from the grand jury; and (2) allowed inadmissible testimony to be presented to the grand jury. The district court agreed and granted respondent's petition which sought dismissal of the indictment with leave for the state to proceed anew in a proper fashion. The state appeals. For the reasons set forth below, we affirm the order of the district court.

### THE FACTS

In 1985, the alleged victim, respondent's eleven-year-old daughter, attended a counseling-oriented special education program operated by the Clark County School District. The program is designed for children whose learning abilities are impeded by social or emotional problems. As a result of certain allegations made by the daughter in a homework assignment, the school authorities requested the police to investigate the child's accusations that she had been the victim of sexual abuse. Thereafter, in interviews with Detective Crawford, the daughter alleged that her father, her thirteen-year-old brother, and an adult male neighbor had sexually abused her. As a result of these statements, the child was placed in protective custody in a foster home, and grand jury proceedings were instituted.

Prior to the grand jury proceedings, a custody hearing was held in juvenile court in which the daughter recanted her accusations

against her brother and the neighbor. She specifically testified that she had not told the truth regarding those accusations. She later testified before the grand jury, however, that her father had touched her on her chest and genitals and had subjected her to fellatio. During her testimony before the grand jury, the deputy district attorney, Mr. Jeffers, did not question her regarding her prior accusations against her brother and the neighbor. In essence, in her brief appearance before the grand jury, she merely related her allegations against her father.

The grand jury, however, received a substantial amount of testimony from numerous other witnesses. In addition to his claims regarding the deputy district attorney's failure to submit exculpatory evidence to the grand jury, respondent also argued in his petition below that much of the testimony that was presented was inadmissible and highly inflammatory hearsay evidence. For example, Detective Crawford testified that during her initial interviews with respondent's daughter, the child "indicated to [her] that she was having some problems at home, that she was very frightened of her father and that the reason for that is because he sometimes hit her and hit her brother, but mostly because he touched her in private places and that made her very sad. . . ." Crawford also stated her opinion that the daughter was telling her the truth.

At another point during Crawford's testimony, a juror asked if the daughter had ever made any accusations against her brother. When Crawford answered "Yes," the deputy district attorney interrupted the testimony, stated that he did not believe this evidence was relevant, and asked the grand jury to disregard it. Further, the deputy stated, "We're getting into an offense even if it did occur, it is something that is held in juvenile court and we have absolutely no jurisdiction to get into it."

The grand jury, however, did receive some evidence of the false accusation against the brother, primarily from respondent during his testimony. Specifically, respondent testified that he and his son both passed polygraph examinations concerning the accusations. Respondent stated that polygraph tests "were done on my 13-year-old son and myself" and that he and his son were "accused of the same identical charges, sexual assault and lewdness with a minor." The deputy district attorney responded to this statement by inquiring, "How did your son get in here? We haven't presented any evidence. Did he do something, too?" Respondent then indicated that he was simply trying to explain that his daughter had initially accused them both. Later, respondent testified that his daughter had recanted the charges against his son.

Additionally, the deputy district attorney discouraged the grand jury from accepting evidence of the son's polygraph exam. Spe-

cifically, the deputy stated, "[t]hese two polygraph examinations, if the foreman wants them in, I would say that whatever the young boy did or didn't do is not a matter of concern to this Grand Jury. That's something handled by Juvenile Court and nothing this Grand Jury could entertain there, if they wanted to, so I don't think it's material." The deputy went on to explain, however, that the jury could consider the tests for "something that would tend to explain away guilt." Nonetheless, at the conclusion of respondent's testimony, the grand jury accepted only the polygraph test of respondent. Specifically, the foreman stated "I would think that any evidence, . . . with regard to the son, would not necessarily be relevant to anything we are discussing. . . ."

We further note that counsel for respondent offered to produce respondent's son as a witness who could relate exculpatory testimony to the grand jury. The deputy district attorney, however, indicated to the grand jury that he felt it would be improper to bring the young boy in "to testify in here when it possibly might involve juvenile matters pending against him." Instead, the deputy told the grand jury that respondent's counsel had indicated to him in the presence of the grand jury foreman that the essence of the boy's testimony would be to corroborate respondent's contention that the daughter had threatened to "get even" with respondent and his son for "laughing at her." The deputy, however, did not inform the jury that the girl had recanted her accusations against the son in sworn testimony during the prior custody proceedings, and that this might be evidence which could explain away respondent's guilt. Additionally, our review of the record reveals no indication that the deputy district attorney ever informed the grand jury that the daughter had made and later recanted accusations against a neighbor.

Respondent also testified extensively before the grand jury that he suspected that his daughter's teacher was actually the one who had abused his daughter. In this regard, the deputy district attorney called attorney John Lukens, ostensibly to present evidence which would tend to explain away respondent's guilt. Lukens was appointed by the juvenile court to act as an investigator on behalf of the court and as counsel for the daughter during the juvenile proceedings. As such, he investigated the allegations that the daughter's teacher may have actually molested the child. Lukens' testimony recounted statements made by a parent and grandparent of one of the daughter's classmates to the effect that the teacher was "just absolutely tremendous" and that they wished that the girl could still be in the teacher's class because she was "the best." Lukens further stated that there was "simply nothing to any of those allegations that had been made." Despite the deputy district attorney's admonishment to the grand jury that this hear-

say testimony was being presented only as evidence that could be considered to explain away respondent's guilt, it appears that the testimony, in reality, was directed at destroying respondent's credibility and building the state's case.

Further, we note that the grand jury spent a substantial amount of time exploring some disturbing facts surrounding Mike Barbutti's tangential involvement in this matter. Barbutti is a Las Vegas radio personality. He testified that respondent's daughter frequently called him at the radio station to request songs and talk. According to Barbutti, after the child was removed from her parents' custody, the family requested that he look into the matter. Thereafter, Barbutti received a list of names and a note from an anonymous source indicating that the people on the list would have information on the case. Apparently, Barbutti's investigation focused on the teacher's involvement in the matter. Barbutti stated that after he had contacted some of the people on the list, an unknown individual delivered an envelope to him. Apparently, this individual told Barbutti that there was $5,000 in the envelope and that Barbutti would receive $45,000 more if he dropped the investigation. Barbutti told the grand jury that the envelope actually contained only $3,900 and that he had spent the money, and misplaced the list.

At the conclusion of the grand jury proceedings, the deputy district attorney informed the jurors that he had "tried to present to you all the evidence that I thought even might be described as something that would explain away guilt." He further attempted to admonish the jurors that some of Detective Crawford's testimony was "not for the truth of the matter, but merely to explain how she got into the mainstream of the investigation," and that he felt that Crawford was qualified, based upon her experience and background, to offer her opinion as to the truthfulness and credibility of the daughter. Thereafter, on March 20, 1986, the grand jury returned its indictment against respondent.

## THE LAW

NRS 172.145(2) provides that "[i]f the district attorney is aware of *any* evidence which will explain away the charge, he *shall* submit it to the grand jury." (Emphasis added.) As noted above, respondent argued that the deputy district attorney violated his duty under NRS 172.145(2) by failing to present to the grand jury "conclusive proof that [the daughter] made deliberately false accusations of sexual misconduct against other individuals" at the same time that she was making similar accusations against her father. We agree. In our view, the evidence regarding the daughter's prior false accusations, made at

the same time she also accused her father, has a tendency to explain away the charge against respondent. By failing to submit this evidence to the grand jury, the district attorney violated his duty dictated by the plain, unambiguous language of NRS 172.145(2).

Moreover, we conclude that the deputy district attorney not only failed to present the exculpatory evidence, but he also actively discouraged the grand jury from receiving and exploring evidence of the prior false accusations, particularly in regard to the accusation against respondent's son. The grand jury's "mission is to clear the innocent, no less than to bring to trial those who may be guilty." *See* United States v. Dionisio, 410 U.S. 1, 16-17 (1973). Of course, we express no opinion as to the guilt or innocence of respondent in this matter. We observe, however, that accusations of this nature "tend to inflame persons of normal sensibilities." *See* Sheriff v. Miley, 99 Nev. 377, 385, 663 P.2d 343, 348 (1983) (GUNDERSON, J., dissenting). Where, as here, "a prosecutor refuses to present exculpatory evidence, he, in effect, destroys the existence of an independent and informed grand jury." *See* United States v. Gold, 470 F.Supp. 1336, 1353 (N.D.Ill. 1979); *see also* Johnson v. Superior Court of San Joaquin County, 539 P.2d 792 (Cal. 1975). We conclude, therefore, that in this particular instance the actions of the deputy district attorney, coupled with the admission of hearsay evidence as discussed below, irreparably impaired the proper performance of the grand jury's mission to pursue its investigation independently of the prosecuting attorney. *See* United States v. Dionisio, 410 U.S. at 16-17.

As noted, respondent also argued below that the indictment was tainted by the fact that the deputy district attorney allowed numerous witnesses to present inadmissible and highly inflammatory hearsay evidence. Specifically, respondent objected to the testimony referred to above of Detective Crawford and attorney Lukens. NRS 172.135(2) provides that "[t]he grand jury can receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence." The state did not contradict respondent's allegation that inadmissible evidence was presented to the grand jury. Instead, it argued that a sufficient amount of admissible evidence was presented to sustain the indictment. *See, e.g.,* Robertson v. State, 84 Nev. 559, 561-562, 445 P.2d 352, 353 (1968) (regardless of presentation of inadmissible testimony, if there is the slightest sufficient legal evidence and best in degree, the indictment will be sustained). While we continue to adhere to the general rule announced in *Robertson*, under the circumstances of this case, we conclude that the district

attorney's failure to submit exculpatory evidence, coupled with the substantial body of inadmissible evidence received by the grand jury, clearly destroyed the existence of an independent and informed grand jury and irreparably impaired its function. *See* United States v. Gold, 470 F.Supp. at 1353; *see generally* Gibbons v. State, 97 Nev. 299, 629 P.2d 1196 (1981) (judgment of conviction reversed where jury's deliberations at trial were unduly prejudiced and influenced by admission of improper evidence).

Finally, we note that respondent's petition specifically requested the district court to issue a writ of habeas corpus with leave for the state to proceed anew in a proper fashion. Under these circumstances, we conclude that the district court properly granted respondent's petition. In light of our conclusion in this regard, our consideration of the additional ground which respondent asserted in support of his petition below is unnecessary. Accordingly, we affirm the order of the district court granting respondent's petition.