140 Nev., Advance Opinion 63

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| NATHAN CHASING HORSE,<br>Petitioner,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT<br>COURT OF THE STATE OF NEVADA,<br>IN AND FOR THE COUNTY OF<br>CLARK; AND THE HONORABLE<br>CARLI LYNN KIERNY, DISTRICT<br>JUDGE,<br>Respondents,<br>and<br>THE STATE OF NEVADA,<br>Real Party in Interest. | No. 86538<br><br>FILED<br><br>SEP 26 2024<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |



Original petition for a writ of mandamus or, alternatively, prohibition challenging a district court order denying a pretrial petition for a writ of habeas corpus.

*Petition granted.*

Nancy Lemcke, Public Defender, and Kristy S. Holston, Chief Deputy Public Defender, Clark County,
for Petitioner.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and William C. Rowles and Karen L. Mishler, Chief Deputy District Attorneys, Clark County,
for Real Party in Interest.

24-35814

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, J.:

A grand jury is charged with the solemn duty of deciding whether the State has sufficient evidence demonstrating probable cause to issue an indictment. In fulfilling that duty, the grand jury checks the power of the State and protects fellow citizens from unfounded prosecutions. In this original proceeding, we consider two assignments of error within such grand jury proceedings in determining whether the district court manifestly abused its discretion in denying petitioner Nathan Chasing Horse's pretrial petition for a writ of habeas corpus: first, whether a State-provided instruction defining the term "grooming" prejudiced Chasing Horse, and second, whether the State must present exculpatory evidence that it is aware of but which it considers to be mere inconsistent statements.

We conclude that it is error for the State to give the grand jury an instruction that is unsupported by the evidence and does not address a necessary element of an offense under NRS 172.095(2). In this case, the State exceeded its statutory duty and gave the grand jury an improper instruction on grooming that prejudiced Chasing Horse. We also conclude that Chasing Horse was prejudiced by the State's failure to present exculpatory evidence, as required by NRS 172.145(2). The combination of these two clear errors undermines our confidence in the grand jury proceedings and created intolerable damage to the independent function of the grand jury process. Because the State provided an inflammatory instruction and failed to present exculpatory evidence, the district court

 

manifestly abused its discretion by denying pretrial habeas relief. Accordingly, we grant the writ petition before us.

## BACKGROUND

The State sought an indictment charging Chasing Horse with numerous felonies allegedly committed between February 2012 and January 2023. The grand jury returned an indictment on 18 felonies, including 16 counts of sexual assault involving two alleged victims—C.C.H. and S.B. As a result, Chasing Horse is awaiting trial.

The allegations against Chasing Horse are as follows. According to C.C.H., she first met Chasing Horse when she was between 6 and 7 years old. C.C.H. and Chasing Horse are members of the Lakota Tribe, and Chasing Horse held a prominent position within that community. In that role, Chasing Horse traveled throughout North America to perform ceremonies. Chasing Horse was also known to communicate with ancestral spirits and to heal afflicted members of the Lakota community.

When C.C.H. was 14, her mother, Melissa, was diagnosed with Stage IV cancer. Melissa sent C.C.H. to Chasing Horse to ask him to perform a ceremony to heal the cancer. When C.C.H. sought his help, Chasing Horse told her that the ancestors required C.C.H. to have sexual intercourse with him. C.C.H. believed that to be true and agreed. Chasing Horse told C.C.H. that they made a sacred promise with the spirits and that C.C.H. had to keep it a secret. The sexual relationship continued during ceremonial trips to other states. After one trip, Chasing Horse performed a ceremony for Melissa and the cancer went into remission, reinforcing C.C.H.'s belief in Chasing Horse's abilities. C.C.H. continued to have sexual interactions with Chasing Horse because she believed that Melissa's cancer would return if she stopped.

The second alleged victim, S.B., met Chasing Horse when she was 3 or 4 years old and over several years participated in ceremonies with him. S.B.'s mother was romantically involved with Chasing Horse, and S.B. viewed him as a father figure. S.B. also believed Chasing Horse could speak with the ancestors and spirits. In 2014, when S.B. was 19 years old, she traveled to Chasing Horse's home at his request. At the house, Chasing Horse had sexual intercourse with S.B. Chasing Horse told S.B. that the ancestors told him to have sex with her. S.B. testified that she did not want to have sex with Chasing Horse but was afraid of the ancestors and any consequence she would face if she refused.

In 2022, investigators from the Bureau of Indian Affairs (BIA) interviewed C.C.H., who was about 24 years old at the time. During the interview, C.C.H. discussed a sexual encounter she had with Chasing Horse and stated that she did not feel bad about her decision. Rather, C.C.H. stated that she was proud because she thought it helped her mother. Although the sexual encounters involved this transactional aspect, C.C.H. stated that during her trip with Chasing Horse in 2012 through multiple states, she believed she was falling in love with him. C.C.H. stated that the sexual encounters continued for years across multiple states and that she eventually fell in love with Chasing Horse, wished to be his wife, and pressured Chasing Horse to allow her to move in with him.

That same year, C.C.H. wrote a social media post discussing her relationship with Chasing Horse. C.C.H. stated in the post that she had initially wanted to say "no" during their first sexual encounter, but she agreed after Chasing Horse told her it was the only way to help Melissa. C.C.H. said she made a proud, honorable decision. The post also discussed her love for Chasing Horse and her desire to be his wife. C.C.H. wrote that

SUPREME COURT
OF
NEVADA

(O) 1947A

4

she wanted to move in with Chasing Horse and had to pressure him to allow her to do so. Finally, she wrote that she had said "yes" when Chasing Horse told her he wanted to arrange for her to have sex with other men.[1]

After seeing this post and further investigating, the State sought an indictment of Chasing Horse. The charges were brought before a grand jury. During the grand jury proceedings, the State presented testimony from four witnesses, including the two alleged victims. The State did not present C.C.H.'s BIA interview or her social media post to the grand jury. The State also did not present any expert testimony on the clinical concept of "grooming" but nevertheless provided the grand jury with the following instruction on the subject:

> The term "grooming" describes:
>
> [W]hen an offender prepares a child for victimization by getting close to the child, making friends with the child, becoming perhaps a confidant of the child, and getting the child used to certain kinds of touching, and play activities.
>
> Grooming can also include gifts, praises, and rewards as well as exposure to sexual items and language.
>
> This conduct is undertaken to develop an emotional bond between the victim and offender and may even lead the victim to feel responsible for his or her own abuse.
>
> The offender engages in grooming activity to reduce the child's resistance to sexual activity and reduce the possibility that the victim will report the abuse.

---

[1]The State alleged three counts of sexual assault under alternative theories of principal, conspiracy, or accomplice liability.

Ultimately, the grand jury returned an indictment charging Chasing Horse with 19 felonies—first-degree kidnapping of a minor, open or gross lewdness, trafficking in a controlled substance, six counts of sexual assault, and ten counts of sexual assault of a victim under 16 years of age.

After the grand jury returned the indictment, Chasing Horse filed a pretrial petition for a writ of habeas corpus. The petition challenged the indictment on multiple grounds, including that the State improperly instructed the grand jury on grooming and failed to introduce exculpatory evidence that it was aware of—C.C.H.'s BIA interview and social media post. The district court dismissed count 19 (trafficking in a controlled substance) but otherwise denied Chasing Horse's pretrial habeas petition. Chasing Horse filed the instant petition seeking writ relief, and a panel of this court declined to entertain the petition. *Chasing Horse v. Eighth Jud. Dist. Ct.*, No. 86538, 2023 WL 8659301 (Nev. Dec. 14, 2023) (Order Denying Petition). We granted Chasing Horse's subsequent petition for en banc reconsideration under NRAP 40A.

## DISCUSSION

*This court's review by way of mandamus is warranted*

Chasing Horse seeks a writ of mandamus compelling the district court to grant the pretrial habeas petition and dismiss the charges.[2] Writ relief is an extraordinary remedy, and "it is within the discretion of

---

[2]Chasing Horse nominally seeks alternative relief in the form of prohibition. But prohibition is not available to challenge the denial of a pretrial petition for a writ of habeas corpus, given that the district court had jurisdiction to hear the petition. *See Goicoechea v. Fourth Jud. Dist. Ct.*, 96 Nev. 287, 289, 607 P.2d 1140, 1141 (1980) ("A writ of prohibition . . . will not issue if the court sought to be restrained had jurisdiction to hear and determine the matter under consideration.").

this court to determine if a petition will be considered." *Clay v. Eighth Jud. Dist. Ct.*, 129 Nev. 445, 450, 305 P.3d 898, 901 (2013). A petitioner carries "the burden of demonstrating that extraordinary relief is warranted." *Pan v. Eighth Jud. Dist. Ct.*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004). A writ of mandamus is available "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station" or to control the manifest abuse or arbitrary or capricious exercise of discretion. NRS 34.160; *Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). "Because mandamus is an extraordinary remedy, this court does not typically employ it where ordinary means, already afforded by law, permit the correction of alleged errors." *Walker v. Second Jud. Dist. Ct.*, 136 Nev. 678, 681, 476 P.3d 1194, 1197 (2020); *see also* NRS 34.170 (providing that mandamus "shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law").

"[T]he right to appeal is generally an adequate legal remedy that precludes writ relief." *Pan*, 120 Nev. at 224, 88 P.3d at 841. We apply that general proposition for sound reasons, including the promotion of judicial economy by reserving appellate review to final judgments and thereby avoiding piecemeal litigation. *See Archon Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 816, 823-24, 407 P.3d 702, 709 (2017) (recognizing that the trial court should proceed without interference from the appellate court and the appellate court is better equipped to review the matter with a complete record before it); *Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 444, 874 P.2d 729, 733 (1994) (describing the goal of promoting judicial economy as "avoiding the specter of piecemeal appellate review").

Chasing Horse contends that this court should entertain the petition because it presents important legal issues in need of clarification and that the remedy of an appeal, if he is convicted at trial, is neither adequate nor speedy. Under the facts of this case, we agree. *See Schuster v. Eighth Jud. Dist. Ct.*, 123 Nev. 187, 190, 160 P.3d 873, 875 (2007) ("Where the circumstances establish urgency or strong necessity, or an important issue of law requires clarification and public policy is served by this court's exercise of its original jurisdiction, this court may exercise its discretion to consider a petition for extraordinary relief."). As we have recognized, a direct appeal from a final judgment of conviction—the ordinary remedy in the criminal context—may be inadequate when errors in a grand jury proceeding are alleged because "any error in the grand-jury proceeding is likely to be harmless after a conviction." *Clay*, 129 Nev. at 450, 305 P.3d at 901. Clearly, not every error during grand jury proceedings warrants our extraordinary intervention. Cases that do are rare—as they should be. But the general bar to writ relief may yield where, as here, a petition presents an important legal issue in need of clarification. *E.g.*, *Rugamas v. Eighth Jud. Dist. Ct.*, 129 Nev. 424, 430-31, 305 P.3d 887, 892 (2013) (recognizing that this court may exercise its discretion to entertain a writ petition when it presents an important issue of law needing clarification); *Ostman v. Eighth Jud. Dist. Ct.*, 107 Nev. 563, 565, 816 P.2d 458, 459-60 (1991) (exercising discretion to consider a pretrial mandamus petition that presented a purely legal question).

We elect to entertain this petition for two reasons. First, both issues present purely legal questions that may not be adequately addressed after a conviction. Second, the case presents an important legal issue in need of clarification. We have entertained a pretrial writ petition where the

SUPREME COURT
OF
NEVADA

(O) 1947A

State failed to inform the grand jury of the statutory definition of an element of the charged offense. *See Clay*, 129 Nev. at 457, 305 P.3d at 906 (concluding that "it was incumbent upon the prosecutor to provide the statutory definition of this element"). This case presents a different predicament—a misinstructed grand jury. We elect to entertain the petition because this is an important issue requiring clarification that would provide needed guidance to lower courts. Thus, we consider Chasing Horse's contention that the State violated NRS 172.095(2) and NRS 172.145(2).

*The district court manifestly abused its discretion in denying the pretrial habeas petition*

Our criminal justice system relies on the integrity of grand jury proceedings. Prosecutors have the privilege of attending grand jury proceedings. *See* NRS 172.235(1)(a). But this privilege comes with responsibilities. Aside from presenting the State's case, the prosecutor must "inform the grand jurors of the specific elements of any public offense which they may consider as the basis of the indictment." NRS 172.095(2). And Nevada law requires the State to present exculpatory evidence. NRS 172.145(2). In this quasi-judicial function, the prosecutor acts as the grand jury's primary legal advisor. Grand jurors must be given information that is material to their determination. When the State fails in its basic duties, that failure severely undermines the essential integrity of the grand jury process.

Here, Chasing Horse argues the district court had a duty to grant the pretrial habeas petition and dismiss the indictment for two reasons: first, because the grooming instruction given to the grand jury was improper and prejudicial, and second, because the prosecution failed to submit exculpatory statements to the grand jury—this included statements

made by C.C.H. to the BIA investigators and on social media.[3] We address each issue in turn.

*The State failed in its duty to properly instruct the grand jury*

Chasing Horse argues that the district court manifestly abused its discretion in concluding that the instruction defining the term "grooming," though improper, did not result in prejudice. A violation of NRS 172.095(2) requires dismissal if the instructional error creates a likelihood that the grand jury returned an indictment on less than probable cause. *Clay*, 129 Nev. at 458, 305 P.3d at 906-07.

Chasing Horse asserts that the grooming instruction caused the grand jury to return an indictment on less than probable cause. The State contends that the grooming instruction was appropriate and NRS 172.095(2) sets no limits on the legal instructions the State can provide in its duty to inform the grand jury. We disagree with the State on both points.

NRS 172.095(2) requires the State to "inform the grand jury as to the law" of the specific elements of the offenses that the grand jurors are being asked to consider. *Clay*, 129 Nev. at 451, 305 P.3d at 902. The specific elements of sexual assault include that the victim is subjected to sexual penetration "against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of the perpetrator's conduct." NRS 200.366(1)(a). In other words, the State must establish nonconsent for a sexual offense charged under NRS 200.366(1)(a). *See McNair v. State*, 108 Nev. 53, 56-57, 825 P.2d 571, 574 (1992) (explaining that nonconsent is an essential element of sexual assault). The instruction

---

[3]Because we grant the instant petition on the grounds discussed herein, we need not consider Chasing Horse's other assignments of error.

on sexual assault covered that ground. The grooming instruction goes beyond NRS 172.095(2) and exceeds the requirement to instruct the grand jury about the specific elements of the offenses for which the indictment is sought.

In *Perez v. State*, we held that relevant *expert testimony* may be admissible on the issue of grooming in prosecutions of sexual offenses. 129 Nev. 850, 853, 313 P.3d 862, 864-65 (2013). "The term 'grooming' describes when an offender prepares a child for victimization by getting close to the child, making friends with the child, becoming perhaps a confidant of the child, and getting the child used to certain kinds of touching, and play activities." *Id*. at 855, 313 P.3d at 866 (cleaned up). Thus, expert testimony on "grooming" contextualizes otherwise innocuous acts and may assist jurors in understanding issues of consent, nonconsent, and submission as they relate to a consent *defense* to an allegation of sexual assault. And we explained "that whether *expert testimony* on grooming behavior is admissible in a case involving sexual conduct with a child must be determined on a case-by-case basis." *Id*. at 853, 313 P.3d at 864-65 (emphasis added).

In this case, the State gave the grand jury a definition of grooming that was wholly unsupported by competent evidence. The instruction given by the State appears to be taken almost verbatim from *Perez*. Yet the State offered no expert testimony—nor really any testimony from anyone—about grooming. By giving the grooming instruction, the State turned an evidentiary issue into an instruction on the law; thus, the State blurred the line between a legal instruction and evidence. The State cannot repackage permissible expert opinion testimony as the law that the grand jury had to apply. The State thus erroneously provided the grand

jury with an expert definition of a clinical term that was untethered to any evidence. *Cf. Finger v. State*, 117 Nev. 548, 577, 27 P.3d 66, 85 (2001) (describing "insane" as "a term of art" and "stress[ing] the need for experts and juries to be correctly advised on the" correct legal standard); *see also Clay*, 129 Nev. at 456, 305 P.3d at 905 (explaining that, when considering NRS 172.095(2), "the focus should be on the effect that misleading or omitted instructions on the elements of the offense had on the integrity of the grand-jury proceedings").

Although the district court correctly found the grooming instruction improper, we disagree with the district court's conclusion that the error did not prejudice Chasing Horse. This instructional error warrants relief, as this instruction likely confused the grand jury by cavalierly injecting a clinical term of art into the proceedings. The grand jury here was presented with an instruction explaining a clinical term that was not addressed in any evidence submitted to the grand jury. The challenged instruction suggested that the grand jury could determine that Chasing Horse "groomed" the alleged victims before the sexual offenses to cultivate submission. Such a determination may be reached after the consideration of admissible expert testimony, not solely by an instruction drafted by the prosecution. We conclude that the State provided a grossly improper instruction and that Chasing Horse was prejudiced by the error, which inexorably tainted the grand jury's deliberative process. The State then compounded that error by failing to submit exculpatory evidence to the grand jury.

*The State failed in its obligation to submit exculpatory evidence to the grand jury*

Chasing Horse argues that the State should have presented C.C.H.'s statements that she made to the BIA and on social media because they undermine an element of the sexual assault charges—nonconsent—and thus explain away those charges. NRS 172.145(2) requires the State to submit to the grand jury any evidence the State "is aware of" that "will explain away the charge." This means that the State must present all "known exculpatory evidence." *Mayo v. Eighth Jud. Dist. Ct.*, 132 Nev. 801, 808, 384 P.3d 486, 491 (2016). "The determination of whether particular evidence is exculpatory is generally left to the discretion of the district court." *Ostman*, 107 Nev. at 564, 816 P.2d at 459.

In the State's view, the statements made to the BIA and on social media amount merely to inconsistent statements by C.C.H., and thus the State was not required to submit the evidence to the grand jury. *See Lay v. State*, 110 Nev. 1189, 1198, 886 P.2d 448, 453 (1994) (concluding that a prior inconsistent statement of a witness does not necessarily explain away the criminal charge within the meaning of the exculpatory evidence). Indeed, even at oral argument the State refused to acknowledge that the statements had any exculpatory value. But two things can be true. An alleged victim's prior statements can be inconsistent *and* exculpatory.

Here, the State charged Chasing Horse with multiple felonies allegedly occurring over a lengthy period of time. Most of the charges (16 of 18) leveled against Chasing Horse allege sexual assault, and C.C.H. is the victim alleged in most of the sexual assault charges (15 of 16). As noted above, the State must demonstrate nonconsent to establish probable cause supporting the sexual assault charges. *Compare* NRS 200.366(1)(a) (providing that sexual assault occurs "against the will of the victim"), *with*

NRS 200.364(10) (defining statutory sexual seduction as "ordinary sexual intercourse . . . committed by a person 18 years of age or older with a person who is 14 or 15 years of age and who is at least 4 years younger than the perpetrator"). Thus, most of the charges depended on the grand jury determining that there was probable cause to believe the sexual relationship between Chasing Horse and C.C.H. was against the latter's will.

The allegations against Chasing Horse are indisputably serious, and we express no opinion about Chasing Horse's guilt or innocence. We have explained that "the simple fact that a witness has contradicted himself in the past does not tend to explain away the charge, and therefore make the witness'[s] first statement exculpatory within the meaning of the exculpatory evidence statute." *Lay*, 110 Nev. at 1198, 886 P.2d at 454 (internal quotation marks omitted). In *Lay*, we concluded that the State was not required to submit grand jury witnesses' inconsistent statements as to identification, as those statements were relevant to impeach the witnesses' credibility *at trial*. *Id*. at 1197-98, 886 P.2d at 453-54. Thus, to be clear, not all inconsistent statements are exculpatory. But unlike in *Lay*, C.C.H.'s statements were relevant to consent. Specifically, C.C.H.'s statements on social media and to the BIA discuss the fact that she was proud of her decision to engage in a sexual relationship with Chasing Horse, her love for him, and her eventual initiation of the marriage-like relationship.

When a victim of a sexual offense makes statements that may indicate consent to all or some of the sexual conduct, those statements have exculpatory value to the extent that nonconsent is an element of an offense being considered by the grand jury. Even if the statements only explain

away some charges, that evidence is still critical for the grand jury to assess. *See State v. Babayan*, 106 Nev. 155, 172, 787 P.2d 805, 817 (1990) (stating that, although the evidence at issue was not "entirely dispositive" as to an element of sexual assault, "[t]he grand jury should have had [the] information before it in order for it to make an informed determination"). The number of charges a defendant faces affects that defendant's position, not just in terms of the trial but also in terms of potentially seeking resolution without trial.

A fair grand jury process is a foundational and necessary component of an impartial system of criminal justice. *See Ex parte Bain*, 121 U.S. 1, 11 (1887) (explaining that grand juries are "designed as means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity"), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 631 (2002). "The grand jury's mission is to clear the innocent, no less than to bring to trial those who may be guilty." *Sheriff, Clark Cnty. v. Frank*, 103 Nev. 160, 165, 734 P.2d 1241, 1244 (1987) (internal quotation marks omitted). Requiring the State to present more, not less, evidence furthers that mission, particularly when the evidence can exculpate a defendant. Both the BIA interview and social media post contain statements that a reasonable fact finder may view as evidence that the alleged victim consented to sexual activity. Thus, those statements are exculpatory as they can explain away one or more of the sexual assault charges involving C.C.H. Because the State knew about both of those statements, the State had a duty to submit those statements to the grand

jury for its consideration. The State's failure to do so impaired the independent function of the grand jury.

Simply put, the State's omission prejudiced Chasing Horse. The likelihood that the omitted evidence will be introduced at trial does not obviate that prejudice. And as the prosecutor was the only party present at the grand jury proceedings, we cannot sanction the State abusing the process and then benefiting from its own impropriety. So, here again, we believe the district court erred because Chasing Horse was prejudiced by the State's errors at the grand jury proceeding. *See Babayan*, 106 Nev. at 174, 787 P.2d at 818 (concluding that "dismissal without prejudice will remedy the derelictions in the absence of an irremedial evidentiary taint or prejudice to the defendant's case on the merits"). The district court manifestly abused its discretion because these multiple errors warranted dismissal of the indictment without prejudice.

## CONCLUSION

We hold that it was error for the State to provide an improper instruction to the grand jury that neither explained an essential element of an offense nor had any evidentiary basis. We also conclude that the State cannot avoid its obligation under NRS 172.145(2) to present exculpatory evidence to the grand jury by characterizing such evidence as merely inconsistent statements. Accordingly, we conclude that the district court manifestly abused its discretion in denying the pretrial habeas petition. Therefore, we grant the writ petition before us and direct the clerk of this court to issue a writ of mandamus directing the district court to enter an

order granting the pretrial habeas petition and dismissing the indictment without prejudice. While the State may go back to the grand jury to seek another indictment, if it does so, its presentation must remedy the errors this court has addressed in this opinion.

_____, J.
Herndon

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Lee

_____, J.
Bell

PARRAGUIRRE, J., dissenting:

"The grand jury's 'mission is to clear the innocent, no less than to bring to trial those who may be guilty.'" *Sheriff, Clark Cnty. v. Frank*, 103 Nev. 160, 165, 734 P.2d 1241, 1244 (1987) (quoting *United States v. Dionisio*, 410 U.S. 1, 16-17 (1973)). Thus, providing the grand jury with appropriate instructions and exculpatory evidence is crucial to its proper functioning. If the State has not lived up to its mandate to ensure the integrity of a grand jury proceeding, it is incumbent upon this court to underscore the State's duty in this regard through proper reproach in the right case. This is not the right case.

There are clear problems with this court entertaining Chasing Horse's mandamus petition. I do not agree with the majority that the two questions it now addresses are "purely legal questions." *See* Majority op. at 8. On the contrary, Chasing Horse asks this court to review a probable cause determination partly based on factual contentions that are not part of the record. With regard to the alleged violations of NRS 172.145(2), we do not have the full purportedly exculpatory statements in the record. This court was provided with only a summary of the statements and minimal excerpts handpicked by Chasing Horse. Without the actual statements in the record, we cannot determine whether they are exculpatory; nor can we say whether the prosecution should have readily recognized the statements to be exculpatory, which is necessary for a violation of NRS 172.145(2) to occur.[1] *See Mayo v. Eighth Jud. Dist. Ct.*, 132 Nev. 801, 806, 384 P.3d 486, 489 (2016) (holding that a district attorney must appreciate the exculpatory

---

[1]At oral argument, the State noted that at the time of the grand jury proceedings, it did not recognize the statements to be exculpatory and still does not believe them to be exculpatory.

value of a piece of evidence to be "aware" of it for purposes of NRS 172.145(2)).

Next, based on the summarized statements that were provided to this court, I cannot agree that NRS 172.145(2) required the district attorney to present the statements such that the probable cause determination must be nullified for its failure to do so. NRS 172.145(2) states that the prosecution must submit to the grand jury "any evidence which *will* explain away the charge." In *Mayo*, this court quoted with approval a New Jersey case which held that "[o]nly when the prosecuting attorney has actual knowledge of *clearly* exculpatory evidence that *directly* negates guilt must such evidence be presented to the grand jury." 132 Nev. at 808, 384 P.3d at 491 (emphases added) (quoting *State v. Hogan*, 676 A.2d 533, 544 (N.J. 1996)). To be clear, the *Mayo* court did not adopt that test as the law in Nevada, but it recognized the "practical difficulties in '[a]scertaining the exculpatory value of evidence at such an early stage of the proceedings.'" *Id.* at 808, 384 P.3d at 490 (quoting *Hogan*, 676 A.2d at 544). The majority's decision ignores these practical difficulties and will lead to confusion and significant burdens on the prosecutorial function at the grand jury stage.

Here, the statements summarized for us discuss the fact that C.C.H. was proud to engage in sexual conduct with Chasing Horse because she believed that it would help her mother. Based on C.C.H.'s grand jury testimony, it appears the idea that participating in this behavior would help her mother was a notion intentionally placed into C.C.H.'s mind by Chasing Horse in order to procure her submission. But "[s]ubmission is not the equivalent of consent." *McNair v. State*, 108 Nev. 53, 57, 825 P.2d 571, 574 (1992). I cannot agree that a person can convince a child that sexual

conduct is the only way to save her mother from a deadly disease and then claim that the child's statement that she was proud to save her mother's life will explain away any notion of a lack of consent. Whether or not C.C.H. ultimately felt proud that she engaged in this conduct is a different question from whether it was consensual, and consent is not retroactive such that a nonconsensual sexual encounter becomes consensual because a victim feels differently about the event upon reflection than she did in the moment. The other excerpts provided to this court discuss C.C.H. falling in love with Chasing Horse and wishing to be his wife. Notwithstanding that C.C.H. already testified to those same sentiments in her grand jury testimony, the fact that a victim may be in love with her abuser is not an unknown phenomenon. Love does not necessarily exculpate sexual assault, and I do not agree that these statements "will explain away the charge[s]." NRS 172.145(2).

I emphasize that I do not assert that these statements lack any exculpatory value. I merely suggest that it is not clear whether they are exculpatory on their own such that a probable cause determination by a grand jury should be nullified because the district attorney did not recognize them to be exculpatory. Nor can I say that they so clearly explain away the charges that the district court *manifestly abused its discretion* in ruling that the grand jury's probable cause determination may stand. *See State v. Eighth Jud. Dist. Ct. (Armstrong)*, 127 Nev. 927, 931, 267 P.3d 777, 779 (2011) (explaining that a writ of mandamus is available "to control a manifest abuse . . . of discretion"). It may be the case that the conduct between Chasing Horse and C.C.H. was consensual, and these statements may provide reasonable doubt as to the charges of sexual assault at trial. Certainly, as the district court noted, the statements will be "ripe fodder for

SUPREME COURT
OF
NEVADA

(O) 1947A

3

cross-examination." But even if these statements were presented to the grand jury, there was enough competing evidence suggesting a lack of consent for a grand jury to return an indictment.

It is true that grand jury errors are likely to be harmless on appeal, and thus, review under a mandamus petition may be the best way to ensure that grand jury proceedings comport with due process. *See Clay v. Eighth Jud. Dist. Ct.*, 129 Nev. 445, 450, 305 P.3d 898, 901 (2013). However, what should not get lost in this discussion is the *reason why* this alleged error would likely be harmless in the event of conviction and appeal—all of this evidence is going to come in at trial. Trial is where the evidence is rigorously tested and the extent to which each piece of evidence is inculpatory or exculpatory is determined. A grand jury is not the place for such scrutiny of ambiguous evidence. "Requiring the prosecutor to ferret out and present all evidence that could be used at trial to create a reasonable doubt as to the defendant's guilt would be inconsistent with the purpose of the grand jury proceeding and would place significant burdens on the investigation." *United States v. Williams*, 504 U.S. 36, 69 (1992) (Stevens, J., dissenting).

Here, the grand jury was tasked with determining whether there was "slight, even marginal, evidence" that Chasing Horse was guilty of the charges brought against him. *Sheriff, Washoe Cnty. v. Dhadda*, 115 Nev. 175, 180, 980 P.2d 1062, 1065 (1999). It determined that there was. It is not this court's role to second guess the grand jury's determination; that is the jury's role at trial. The majority's decision to entertain this petition turns the grand jury process on its head and invites mandamus review in every instance in which a defendant can point to evidence that was not presented that may provide some reasonable doubt. This will set a

precedent that may flood this court with petitions requesting review of probable cause determinations. *See Kussman v. Eighth Jud. Dist. Ct.*, 96 Nev. 544, 546, 612 P.2d 679, 680 (1980) (explaining that "judicial economy and sound . . . administration [of justice] generally will militate against the u[se] of mandamus [proceedings] to review pretrial probable cause determinations").

The majority's decision to entertain the mandamus petition to address the grooming instruction is similarly flawed in that it further invites mandamus petitions seeking review of a grand jury's probable cause determination. In ruling on the underlying habeas petition, the district court agreed with Chasing Horse that the grooming instruction was improper. However, it determined that there was sufficient evidence to indict even when the instruction was not considered. Therefore, the petition once again asks this court for nothing more than to review the probable cause determination.

As to the merits of this question, when an instruction is challenged, the court must determine whether the instruction "likely caused the grand jury to return an indictment . . . on less than probable cause." *Clay*, 129 Nev. at 458, 305 P.3d at 906-07. Here, much of the evidence provided to the grand jury was indicative of grooming, and this may be a case in which a jury would benefit from evidence on grooming. But the State should have introduced the concept through expert testimony rather than through an instruction. *See Perez v. State*, 129 Nev. 850, 853, 313 P.3d 862, 864-65 (2013) (holding *expert testimony* on grooming is admissible in prosecutions for child sexual assault on a case-by-case basis to be determined by the trial court). However, because I believe there was sufficient evidence for a finding of probable cause even if the grooming

instruction was not considered, I do not believe Chasing Horse has demonstrated prejudice such that the indictment must be dismissed.

In sum, because Chasing Horse largely asks this court to review the probable cause determination, and because he otherwise fails to present compelling grounds for this court's review, I would decline to entertain the petition entirely. However, having considered the merits of the petition upon request of the court en banc, I do not believe the district court manifestly abused its discretion by denying Chasing Horse's habeas petition. I would therefore deny the petition and uphold the grand jury's probable cause determination.

_____, J.
Parraguirre